GEORGE W. MORRISON *vs.* LINA M. PALMER.

Middlesex.	January 9, 1917. — March 13, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CARROLL, JJ.

*Contract,* Construction.	*Words,* "First proceeds."

Where, under the provisions of a contract in writing for the purchase of a going business, a $1,200 balance remaining due on the purchase price is to be paid "out of the first proceeds of the business after deducting all expenses of running the business and twenty-five dollars for living expenses," and where it appears that, at the time of the passing of papers and the signing of the agreement, the purchaser, with the knowledge and acquiescence of the seller, by mortgaging the property procured $1,600, all of which, with $200 added, he paid to the seller, leaving the $1,200 referred to in the contract still due on the purchase price, it cannot be said that the money procured on the mortgage was "first proceeds" of the business.

The words "first proceeds of the business" in the contract above described mean "net profits" of the business.

CONTRACT, with a declaration in three counts, the first count being for $1,200, the balance of the purchase price of a business, alleged to be due under provisions of the contract described in the opinion, and the second and third counts being for sums of money alleged to be due upon certain items of accounting under the provisions of the same contract. Writ dated April 26, 1915.

In the Superior Court the case was tried before *Bell,* J. The material evidence is described in the opinion. At the close of the evidence, the plaintiff asked the judge to rule, as to the first count, as follows:

"1. Proceeds of a business means any money or thing of value resulting from any transaction involving that business, its business assets, or its credit. Proceeds are not limited to profits. A business might be sold at auction at a loss, yet the amount taken in at the sale would be proceeds of the business. So proceeds might result from a mortgage, which is a qualified sale. In this case the promise of the defendant to pay the last balance of $1,200 due on the purchase price out of the first proceeds of the business, deducting running expenses plus $25, necessarily carries the inference that such proceeds would be used for no other purpose. If the jury finds that such proceeds of business obtained by mortgaging it, were used by the defendant, with or without the knowledge of the plaintiff, to pay the plaintiff the amount of $1,800 due May 20th, 1914, and were not used for the purpose contracted for, the payment of the last amount due on the purchase price, and that the plaintiff has not been paid, the verdict must be for the plaintiff, for the full balance due under all the terms of the contract.

"2. Under the terms of the agreement the plaintiff was not to be deprived of the use of any money due him until the full amount of $1,200 was collected by the defendant. He was entitled to the proceeds from time to time after the first $25 had been taken in and current expenses had been paid. If the jury finds that the defendant failed to pay the plaintiff any amount, however small, due him under the express terms of the agreement the verdict must be for the plaintiff for the full balance due under the contract."

"5. The jury must not consider any evidence which might be offered to vary the terms of the written agreement in the absence

of a new consideration offered and accepted. The defendant contracted to pay the last $1,200 due on the purchase price out of the first proceeds of the business after deducting $25 plus running expenses. If the defendant paid such proceeds to the plaintiff for anything other than running expenses or on the final balance of the purchase price, under the strict wording of the contract the verdict must be for the plaintiff in the full amount of the balance due."

The judge refused so to rule, limited the meaning of the word "proceeds," as used in the contract, to mean "profits," and withdrew the first count from the jury. On the other counts there was a verdict for the plaintiff in the sum of $159.75. The plaintiff alleged exceptions, which related only to the first count.

*J. Palmer*, for the plaintiff.

*B. Silverblatt*, for the defendant.

CARROLL, J. The plaintiff agreed to sell to the defendant an awning and sign business for $5,000. Two thousand dollars was paid then. Later, on May 20, 1914, the plaintiff delivered a bill of sale and the parties executed the agreement declared on. This agreement provided that the plaintiff "has this day sold" to the defendant "the business, stock, fixtures and good will of the Cross Awning and Sign Co. . . . : and whereas there is due the said George W. Morrison the sum of three thousand dollars" the defendant was to pay him this sum in the following manner: "Eighteen hundred dollars on or before May 20, 1914, and the balance of twelve hundred dollars is to be paid out of the first proceeds of the business after deducting all expenses of running the business and twenty-five dollars for living expenses, and the balance is to be turned over to the said George W. Morrison until said twelve hundred dollars is fully paid." The defendant was to take charge of the business on May 18, 1914; all orders for work taken on or after May 16 were to belong to her, and all orders received before that time were to be completed on the premises and to be the property of the plaintiff, who was to pay the defendant a fair proportion of the cost for light, help, rent and materials. The plaintiff was to continue without charge until May 27, instructing the defendant, her husband and their sons, and acquainting them with the trade. He was not to engage in the awning or sign business in the city of Lowell for twenty-five years from the date of the

contract. The defendant was to have the exclusive right to use the name of "Cross Awning and Sign Company."

On May 20, the defendant entered the premises for the "purpose of learning the business and took full possession thereof on or about June 1, 1914."

Concurrently, with the execution of the bill of sale and the above agreement, the defendant mortgaged the property to one Ratzkoff for $1,600. This amount, with $200 additional, was at this time paid to the plaintiff; he then knew the property was mortgaged and that the $1,600 paid him was received therefrom.

The plaintiff's writ is dated April 26, 1915. In the Superior Court there was a verdict for the plaintiff in the sum of $159.75. The case is in this court on his exceptions.

The plaintiff contends that under the terms of the contract he was to be paid $1,800 at the time of sale and $1,200 from the "first proceeds of the business;" that the money received from the mortgage is such proceeds; and that he need not wait until the profits from the business are $1,200, and is now entitled to the $1,200 instalment in addition to the $1,800 paid him May 20, 1914.

Although the word "proceeds" is not always synonymous with net profits, but signifies money or other thing of value received from the sale of property, and the income received from a mortgage of property may under some circumstances be considered proceeds, yet the word is not always used in this sense. It may mean the net returns after the payment of necessary expenses. *Commonwealth* v. *Alexander*, 185 Mass. 551, 553. It is a word of varying significance, employed with different meanings. *Kidwell* v. *Ketler*, 146 Cal. 12, 21. The subject matter and purpose of the contract must be considered, in order to determine the meaning of the term as used by the parties. *Smith* v. *Thayer*, 155 Mass. 48, 50. *Old South Association* v. *Codman*, 211 Mass. 211, 216. See *Nash* v. *Webber*, 204 Mass. 419, 424. The plaintiff was selling a "business, stock, fixtures and good will." The expenses of running it were to be deducted and "$25 for living expenses, and the balance is to be turned over to the said George W. Morrison until said $1,200 is fully paid." He was to remain on the premises in order to finish the contracts taken before May 16, and until May 27 he was to continue with the defendant instructing her and her

assistants.   The defendant was to have the use of the trade name and the plaintiff was not to compete with her in the city of Lowell for twenty-five years.

Examining the design of the contract, the whole tenor of the written instrument, and the meaning the parties themselves put upon the words, it is evident that it was not understood by them, and the contract did not contemplate, that the money received from the mortgage to Ratzkoff was "first proceeds," giving the plaintiff the right then to insist on the final payment of $1,200. They were dealing with a stock of goods and fixtures, at the time, mortgaged to meet the payment due on that date.   Without deciding whether the returns from a mortgage executed after the sale of May 20 would be proceeds under the terms of the contract, it was clearly the understanding of all the parties at the time of making the agreement that the business was mortgaged for $1,600.   The plaintiff was disposing of a going concern and its good will.   It was to continue under his supervision after the $3,800 had been paid, and was so to continue when the defendant took possession, paying the plaintiff $1,200 from its proceeds, first deducting expenses.

In the light of all the evidence, to construe the contract as the plaintiff contends would defeat its aim and purpose: it would give him the immediate right, on receiving the $1,800, to demand in addition the entire payment of $1,200.   Such a construction might prevent the defendant from taking possession, from carrying on the business, or from receiving any benefit therefrom.   It would be opposed to the true meaning of the contract and contrary to its import as understood and acted upon by both parties.

*Exceptions overruled.*