DOROTHY J. SHEA *vs.* LIONEL ALFONSE DAVIS, executor, & another.

Suffolk.     October 6, 1941. — December 30, 1941.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Devise and Legacy*, "Out of the rents and proceeds." *Words*, "Rents and proceeds."

A devise of certain real estate to the testator's son with a direction that "out of the rents and proceeds" thereof he should pay a stated amount to each of three daughters, properly was interpreted as meaning that such payments should be made from gross rents where, among other facts, it appeared that the value of the property was not sufficient to permit such payments from net rents but was sufficient to permit them from gross rents; that previous to the making of the will the testator had for a consideration given to each of the three daughters and the son a note in the amount stated in the will; that the daughters' notes had become outlawed; and that he also had given to another daughter and to another son, each, a note in the same amount which had been paid by him.

PETITION in equity, filed in the Probate Court for the county of Suffolk on February 29, 1940.

After a hearing by *Dillon,* J., a decree was entered that "Alphonse Lionel Davis, executor under the will of Frederick P. Davis, pay to Dorothy J. Shea the sum of $1,100 with interest thereon from." March 10, 1938. The respondent appealed as executor and individually.

*A. B. Mannix,* (*F. J. Muldoon* with him,) for the respondents.

*J. M. Graham,* for the petitioner.

QUA, J. The petitioner, formerly Dorothy Davis, seeks to compel the respondent, her brother, to pay to her a legacy of $1,100 given to her under the will of their father, Frederick P. Davis, and in the will charged upon the rents and proceeds of real estate in Boston devised to the respondent.

The will, after providing for the payment of debts and funeral charges, devises the house at 89 Walk Hill Street, with an adjoining lot of land, to the testator's son Lionel Alfonse Davis (the respondent), and then continues as follows:-

"Out of the rents and proceeds of the estate mentioned He is to pay Madeline Davis Kimball, my daughter, eleven hundred dollars in or within two years;

> "He is to pay Leonore Davis, my daughter, eleven hundred dollars in or within four years;
> "He is to pay Dorothy Davis, my daughter, eleven hundred dollars in or within six years.
> "I do not instruct him to pay anything to my son Fred A. Davis nor to my daughter Bernice Claire Davis Walsh, because they have been given a similar amount during my lifetime."

The will then directs that an "insurance policy be divided" equally among the testator's living grandchildren and bequeaths any "equities" "in the Monumental business" and all assets of the business to his son Fred A. Davis. The remainder of the estate is to be equally divided among the testator's children, and the respondent is nominated as executor. The will is dated December 18, 1930. The re-

spondent was appointed executor on March 10, 1932, and has accepted the devise to him of the Walk Hill Street property. No part of the $1,100 payments to the respondent's sisters has been made, and the net rents received by the respondent, including rent at $30 a month for an apartment which the respondent himself occupied, have not been enough, after deducting operating expenses, to pay much more than a third of the three legacies, even if a sum of $1,025 paid on account of the principal of mortgages on the property is to be accounted for as net profit. On the other hand, if by the words "rents and proceeds" out of which the legacies were to be paid the testator meant gross rents, without deduction for operating expenses, the rents have been enough to pay the legacies within the times mentioned in the will, and on this construction the respondent, who accepted the devise with the charge upon it and has had the rents, owes the petitioner her legacy of $1,100 with interest. *Adams* v. *Adams*, 14 Allen, 65. *Pinkerton* v. *Sargent*, 112 Mass. 110, 114. The question in the case is whether the words "rents and proceeds" mean net rents and proceeds or gross rents and proceeds.

Little help is to be had from attempts to define the words rents and proceeds apart from the particular circumstances under which this testator used them. Thus it has been said that proceeds "is a word of varying significance, employed with different meanings." It may refer either to net receipts or to gross receipts. *Morrison* v. *Palmer*, 226 Mass. 383, 386. *Chase* v. *Union National Bank of Lowell*, 275 Mass. 503, 507. See *Commonwealth* v. *Alexander*, 185 Mass. 551, 553; *Daly* v. *Crawford*, 279 Mass. 262, 267. Such insight into the circumstances of the testator and his probable intent as the record affords comes from oral statements of counsel at the hearing in the Probate Court which were agreed to be true. From these the following appears: The testator had two sons and four daughters, all mentioned in the will. He had built the Walk Hill Street house and had been living there in the larger of the two apartments for a number of years before his death. The respondent occupied the smaller apartment at a rental of $25 a month. The

testator's wife, in whose name the property had formerly stood, had died before the will was made, and the children had released to the testator their interests in their mother's estate, for which he had given each of them his note for $1,100. He had paid the notes to Bernice and Fred, but the notes to the three daughters to each of whom in the will he directed the respondent to pay $1,100, were unpaid and had become outlawed. When the will was made the property was subject to two mortgages for $5,000 and $800 respectively. The rate of interest on these does not appear, nor does it appear what payments were to be made on the principal, but from the death of the testator in 1932 down to March 1, 1940, a period of eight years, the respondent paid mortgage interest of $2,585.71. From this it may be inferred that the interest amounted to about $325 a year. The taxes for the eight years after the testator's death averaged about $245 a year. There were also, as might be expected, other expenses for repairs, water, insurance, and miscellaneous items. The total rent has been $900 a year. The inventory of the testator's estate shows that the insurance policy amounted to $1,000 and the testator's stock in the F. P. Davis Monumental Company to $3,895; that there was a bank deposit of $27.75; and that the equity in the real estate in question was appraised (allowing for an obvious clerical error) at $4,400. It will be noted that this figure exactly equals the four unpaid notes held by the three legatees and the respondent. The inventory further states that the property was assessed at $6,600.

Except for such inferences as can be drawn from these facts we have no knowledge of the actual value of the property or what the testator believed its value to be or what he believed the rental value to be of the apartment which he himself occupied. The will was made before the oncoming depression had disclosed its full force, but the testator allowed it to stand after the depression had become severe. Even if we make the somewhat difficult assumption that the property was under assessed and take it as worth its inventory value, it is hard to believe that the testator could

have expected a net profit of $1,100 in two years from a property worth only $4,400 above the mortgages. Since the testator's death there seems to have been no loss of rent. There is nothing to suggest that the respondent has not acted in good faith in getting all the income he could. He increased his own rent $5 a month after his father's death. And yet the property has fallen far short of producing what would be required to carry out the provisions of the will on a basis of net profit. It is hard to believe that the testator could have been so utterly mistaken about the net earning power of his property.

It is plain that the testator intended to secure the payment out of this real estate of the unpaid notes of $1,100 each to three of his daughters. Even if he was optimistic about his property, he could hardly have failed to realize that there was some risk that the net profit might be insufficient. It seems unlikely that he would have allowed payment of the notes to the daughters to be jeopardized through inadequacy of net profits, while at the same time the respondent as devisee held title to the property. On the other hand, if "rents and proceeds" are to be taken as gross there would almost certainly be enough to pay the daughters' notes, and even if the respondent had to contribute to the carrying charges while the notes were being paid he would ultimately own the property in which he had been living and in that manner might receive both reimbursement for his expenditure and the equivalent of payment of his note. The device of payment out of the rents and proceeds may have been hit upon in order to indicate a definite source out of which the notes should be paid and at the same time to defer the payments so that they would not be unduly burdensome to the respondent. Compare *Smith* v. *Fellows*, 131 Mass. 20. If the testator had intended to limit the payments to net profits he could easily have said something to that effect.

On the whole we incline to the view that in this will the words "rents and proceeds" refer to gross income from the property and not to net profits. The decree should be modified, however, so as to make plain that the respondent

is ordered to pay in his individual capacity and not as executor.

*Decree as modified affirmed.*