AEROSPACE OPTIMIST CLUB OF FORT WORTH and Air Force Sergeants Association Chapter 1055, Appellants,

v.

TEXAS ALCOHOLIC BEVERAGE COMMISSION; Dan Morales, in His Official Capacity as Attorney General of the State of Texas; and Kay Bailey Hutchison, in Her Official Capacity as State Treasurer, Appellees.

No. 3–93–444–CV.

Court of Appeals of Texas, Austin.

Nov. 2, 1994.

As Corrected on Denial of Rehearing Nov. 23, 1994.

---

William W. Kilgarlin, Popp & Ikard, Austin, for appellant.

Dan Morales, Atty. Gen., Christine Monzingo, Asst. Atty. Gen., Austin, for appellee.

Before POWERS, ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

Aerospace Optimist Club of Fort Worth (the "Optimist Club") and Air Force Sergeants Association (collectively, "Licensees") sought a refund of taxes paid under protest on the basis that sections of the Bingo Enabling Act (the "Act") imposing taxes on bingo gross receipts violated the constitutional provision authorizing bingo in Texas.[1] Li-

censees appeal the trial court's grant of summary judgment in favor of appellees, Texas Alcoholic Beverage Commission, the Treasurer of the State of Texas, and the Attorney General of Texas (collectively, the "State"). Licensees also appeal the denial of the Optimist Club's motion for partial summary judgment. We will affirm the trial court's judgment.

## BACKGROUND

In 1979, the legislature proposed a constitutional amendment legalizing bingo. Act of May 14, 1979, 66th Leg., R.S., S.J.R. 18, 1979 Tex.Gen.Laws 3221. Voters approved this amendment (the "Bingo Amendment") at the general election on November 4, 1980. *See* Tex. Const. art. III, § 47(b). Six months later, the legislature, acting pursuant to the Bingo Amendment, enacted enabling legislation calling for local taxes on gross receipts of bingo operations. *See* Bingo Enabling Act, 67th Leg., 1st C.S., ch. 11, § 3, 1981 Tex.Gen.Laws 85, 87 (Tex.Rev.Civ.Stat.Ann. art. 179d, § 3, since repealed). In 1987, the legislature amended the Act by adding a state tax on gross receipts of bingo operations. Act of June 17, 1987, 70th Leg., R.S., ch. 478, § 2, 1987 Tex.Gen.Laws 2085, 2086 (Tex.Rev.Civ.Stat.Ann. art. 179d, § 2A, since repealed). In 1991, the legislature increased the state tax from two percent to five percent of gross receipts. Act of Aug. 22, 1991, 72d Leg., 1st C.S., ch. 5, § 11.02, 1991 Tex.Gen. Laws 134, 183 (Tex.Rev.Civ.Stat.Ann. art. 179d, § 2A, since repealed). The legislature repealed all legislation authorizing taxes on gross receipts in 1993. Act of May 25, 1993, 73d Leg., R.S., ch. 286, § 26, 1993 Tex.Gen. Laws 1325, 1335.

In the district court, Licensees alleged that the portions of the Act authorizing taxes on gross receipts of bingo operations were unconstitutional. *See* Bingo Enabling Act, 67th Leg., 1st C.S., ch. 11, § 3, 1981 Tex.Gen. Laws 85, 87 (Tex.Rev.Civ.Stat.Ann. art. 179d, § 3, since repealed); *see also* Act of June 17, 1987, 70th Leg., R.S., ch. 478, § 2, 1987

---

1. Originally, five other parties joined Licensees as plaintiffs in the suit. These five parties non-suited their claims and were dismissed more than five months before any motions for summary judgment were filed.

Tex.Gen.Laws 2085, 2086 (Tex.Rev.Civ.Stat. Ann. art. 179d, § 2A, since repealed). On this basis, Licensees sought a refund of taxes they had paid under protest.[2] After limited discovery, the Optimist Club moved for partial summary judgment seeking declaration that the taxes imposed by the Act were unconstitutional. Thereafter, the State sought summary judgment affirming the constitutionality of the taxes and denying Licensees' application for injunction.[3] The district court rendered judgment in favor of the State and denied the Optimist Club's motion. In two points of error, Licensees seek to appeal both the granting of the State's motion and the denial of the Optimist Club's motion.

## ISSUE

The question presented on appeal is whether the Texas Constitution permits the legislature to impose taxes on gross receipts of bingo operations. The constitutional provision at issue, article III, section 47(b), provides in relevant part:

> The Legislature by law may authorize and regulate bingo games conducted by a church, synagogue, religious society, volunteer fire department, nonprofit veterans organization, fraternal organization, or nonprofit organization supporting medical research or treatment programs.... The law must also require that:
>
> (1) *all proceeds* from the games are spent in Texas for charitable purposes of the organizations....

Tex. Const. art. III, § 47(b) (emphasis added). The constitution does not define the term "proceeds." We must construe the meaning of this provision of the Bingo Amendment in order to decide whether the statute imposing a tax on bingo receipts is constitutional.

## DISCUSSION

### I. *Standard of Review*

The standards for reviewing a motion for summary judgment are well established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). We must determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the non-movant's cause of action and that the movant is entitled to judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Here, the material facts are undisputed. The issue concerns whether the State demonstrated it was entitled to judgment as a matter of law.

The Texas Supreme Court has provided guidelines for constitutional interpretation. "In interpreting any constitutional provision, we begin with the text of the Constitution. When there is doubt as to the meaning of the literal text, we must then consider the intent of the people who adopted the Constitution...." *Wentworth v. Meyer*, 839 S.W.2d 766, 767 (Tex.1992). In deciding whether a statute is constitutional, we presume the constitutionality of an act of the legislature; the challenger has the burden to prove otherwise. *Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 927 (Tex.1985). When there are two possible constructions of a statute, one constitutional and one not, we must adopt the one that renders the statute constitutional. *Bullock v. Regular Veterans Ass'n of the U.S. Post No. 76*, 806 S.W.2d 311, 314 (Tex.App.—Austin 1991, no writ)

---

**2.** The Optimist Club sought recovery of $2,170.28; the Air Force Sergeants Association sought recovery of $2,168.32. *See* Tex.Tax Code Ann. §§ 112.051–.060 (West 1992 & Supp.1994).

**3.** The State also sought summary judgment denying Licensees' class certification and limiting the class to only those who had fulfilled all of the requirements that Texas statutes impose preliminary to filing a tax protest.

(citing *Ohio Oil Co. v. Giles*, 149 Tex. 532, 235 S.W.2d 630, 637 (1950)). Constitutional provisions should not be construed to lead to absurd conclusions if any other interpretation is reasonable. *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147, 155 (1942).

## II. *Constitutional Text*

■ We thus begin our interpretation by examining the applicable constitutional text. The literal text of the Bingo Amendment clearly provides for legislative regulation of bingo; however, the text contains nothing about legislative taxing power associated with this regulation. Generally, unless a constitutional provision expressly prohibits the legislature from taxing specific objects, the legislature may rightfully tax those objects under its broad taxing powers. *See* Tex. Const. art. VIII, §§ 1, 2(a), 17; *State v. Wynne*, 134 Tex. 455, 133 S.W.2d 951, 958 (1939), *appeal dismissed* 310 U.S. 610, 60 S.Ct. 980, 84 L.Ed. 1388 (1940). *See also City of Beaumont v. Fertitta*, 415 S.W.2d 902, 909–10 (Tex.1967). Without question, the constitution does not expressly exempt the object of taxation, gross receipts generated by bingo games, from the legislature's taxing power. Arguably, such an exemption might be implied. *See Shepherd v. San Jacinto Junior College Dist.*, 363 S.W.2d 742, 743 (Tex.1962) (instructing that a legislative act is unconstitutional only if a specific constitutional provision inhibits the legislation, or such is clearly implied).

We first consider the plain meaning of the constitutional provision in issue. Because "proceeds" is not defined, we ascribe to it its ordinary meaning. *Ferguson v. Wilcox*, 119 Tex. 280, 28 S.W.2d 526, 530 (1930). The dictionary defines the term "proceeds" as (1) the total amount brought in; or (2) the net amount received after deduction of any discount or charges. Webster's Third New International Dictionary 1807 (1986). Thus, "proceeds" is ordinarily defined as either the gross amount received or the net amount remaining after deductions.

Other state courts have recognized this variation in definition. "Proceeds" "'is a word of varying significance, employed with different meanings.' It may refer to either net receipts or to gross receipts." *Shea v. Davis*, 310 Mass. 433, 38 N.E.2d 561, 561–62 (1941) (quoting *Morrison v. Palmer*, 226 Mass. 383, 115 N.E. 419, 420 (1917)). The term "proceeds" means that which finally results from an event, taking into account not only that which is received, but also that which is incidentally and properly paid out. *Commonwealth v. Alexander*, 185 Mass. 551, 70 N.E. 1017, 1018 (1904). The *Alexander* court, in interpreting a statute requiring the proceeds of an event to be devoted exclusively to charity, explained that construing "proceeds" to indicate gross receipts would be too broad; the term must necessarily contemplate the payment of expenses. *Id.*

When the Bingo Amendment directs that "all proceeds" must be spent for charitable purposes, at least three interpretations are possible. If "all proceeds" truly refers to every dollar collected by bingo operators, the tax on gross receipts, as not specifically directed toward charitable purposes, would be prohibited by the provision and is unconstitutional. In addition, if "all proceeds" refers to the *net proceeds* from bingo after the deduction of operating expenses, but not gross receipts taxes, the tax on gross receipts is unconstitutional. On the other hand, if "all proceeds" refers to *net proceeds* from bingo games after the deduction of operating expenses, including gross receipts taxes, the tax on gross receipts is constitutional. Because the meaning of the constitutional text is uncertain, we must attempt to discern the intent of the people who adopted it. *See Wentworth*, 839 S.W.2d at 767.

## III. *Intent of the People*

The November 1980 ballot gave voters the opportunity to amend the Texas constitution to authorize the legislature to decriminalize bingo. The ballot provision offered an amendment that would authorize bingo games conducted by the enumerated religious and charitable organizations "if *the proceeds* are to be spent in Texas for those charitable purposes of the organizations." The ballot made no reference to taxes.

"When determining the purpose of a [constitutional] provision, we will consider the evil to be remedied and the good to be

accomplished by that provision." *Brown v. Meyer*, 787 S.W.2d 42, 45 (Tex.1990) (citing *Markowsky v. Newman*, 134 Tex. 440, 136 S.W.2d 808, 813 (1940)); *see also Hamilton v. Davis*, 217 S.W. 431, 432 (Tex.Civ.App.— Austin 1919, writ ref'd). In this case, the "evil to be remedied" was selective enforcement of laws prohibiting gambling and lotteries.[4] *See* Act of June 14, 1973, 63d Leg., R.S., ch. 399, § 47.02, 1973 Tex.Gen.Laws 883, 966 (Tex.Penal Code Ann. § 47.02, since amended). The "good to be accomplished," or the overall purpose of the amendment, was thus the legalization of bingo operations to create uniformity in law enforcement and to prevent otherwise law-abiding citizens from committing criminal acts by participating in bingo games.

The Bingo Amendment requiring "all proceeds" from bingo to be distributed for charitable purposes prompted the anticipation of a secondary "good to be accomplished"—increased charity funding. Still, this analysis does not assist the court in determining whether the voters intended to disallow the legislature's general taxing authority. Because the history of the intent of the people who adopted a constitutional provision is "often difficult to discern," *Wentworth*, 839 S.W.2d at 767 (citing *Edgewood v. Kirby*, 777 S.W.2d 391, 394 (Tex.1989)), we may look to other sources for instruction as to the meaning and purpose of the phrase "all proceeds," including the legislature's interpretation.

## IV. *Legislative Interpretation*

■ The legislature's practical interpretation of a constitutional term can be a valuable aid in determining the meaning and intention of that term in cases of doubt. *Great S. Life Ins. Co. v. City of Austin*, 112 Tex. 1, 243

S.W. 778, 782 (1922). Legislative construction can be of substantial value in constitutional interpretation. *American Indem. Co. v. City of Austin*, 112 Tex. 239, 246 S.W. 1019, 1023 (1922). The legislature has equated the constitutional phrase "all proceeds" with the term "net proceeds" by providing that: "[t]he *net proceeds* of any game of bingo and of any rental of premises for bingo shall be exclusively devoted to charitable purposes." Bingo Enabling Act, Tex.Rev. Civ.Stat.Ann. art. 179d, § 11(d) (West Supp. 1994) (emphasis added). Within this context, "net proceeds" is defined to mean:

> in relation to the gross receipts from one or more occasions of bingo, *the amount that remains after deducting the reasonable sums necessarily and actually expended* for advertising, security, repairs to premises and equipment, bingo supplies and equipment, prizes, stated rental, ... personnel ..., food, beverages, janitorial services and utility supplies and services, license fees, *gross receipts tax....*

Bingo Enabling Act, 67th Leg., 1st C.S., ch. 11, § 2(10)(A), 1981 Tex.Gen.Laws 85, 86 (Tex.Rev.Civ.Stat.Ann. art. 179d, § 2(10)(A), since amended) (emphasis added).[5] The legislature thus intended gross receipts taxes to be one of the expenses deducted before net proceeds were calculated. *Id.*

■ Even though Licensees point to repeated assertions by various individual members of the legislature during debate of the proposed constitutional amendment, they do not contend that every dime from bingo revenues must go to charity. They recognize that reasonable expenditures for operating expenses, prizes, rental, overhead, and the like lawfully must be paid from the gross

---

4. Before the Bingo Amendment, article III, section 47 of the Texas Constitution required the legislature to pass laws prohibiting lotteries. *See* Tex. Const. art. III, § 47 (1876, amended 1980). Under Texas law, bingo is considered a lottery. *See Boatwright v. State*, 118 Tex.Crim. 381, 38 S.W.2d 87, 89 (1931) (defining lottery as any scheme where the elements of consideration, prize and chance are present); *see also* Tex.Penal Code Ann. § 47.01(6) (West 1994). Therefore, until 1980, the operation of bingo games in Texas was illegal. Nevertheless, many community law enforcement officers permitted bingo games sponsored by religious and non-profit organiza-

tions. *See* House Study Group Special Legislative Report, S.J.R. 18, 66th Leg. 21 (1980).

5. The legislature also defines "net proceeds" in relation to the gross rent received for the use of bingo hall premises, fixtures, or equipment by licensed bingo operators. *See* Bingo Enabling Act, Tex.Rev.Civ.Stat.Ann. art. 179d, § 2(10)(B) (West Supp.1994). "Net proceeds" remain after the deduction of "reasonable sums necessarily and actually expended for janitorial services and utility supplies directly attributable to the use of the premises, fixtures, or equipment...." *Id.*

receipts of bingo operations. We agree. We hold that the phrase "all proceeds" as used in the Bingo Amendment means net proceeds after payment of reasonable, incidental, and necessary expenses. Any other construction would be unreasonable. Nothing suggests that the drafters of the amendment or the voters intended bingo operators to seek outside sources of revenue in order to conduct bingo operations.

Nevertheless, appellants contend that gross receipts taxes are not one of the expenses properly payable, and that the imposition of the tax violates the constitution. Their argument is circular, however, in that it is based upon their literal construction that "all proceeds" means *all* proceeds and, therefore, not one cent for tax. The issue left for us to determine is the constitutionality of the legislature's inclusion of the gross receipts tax as an expense to be deducted before net proceeds can be calculated.

### V. *Gross Receipts Tax*

Texas courts have addressed the propriety of treating taxes as expenses to be deducted from gross receipts in terms of determining gross profits and calculating net profits. Net profits, like net proceeds in the context of bingo operations, are what remain after deducting from total receipts all expenses incurred in carrying on a business. *See R.A. Corbett Transp., Inc. v. Oden,* 678 S.W.2d 172, 176 (Tex.App.—Tyler 1984, no writ) (citing *Mangham v. Hall,* 564 S.W.2d 465, 469 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.)). In the context of gross and net profits, case law establishes two links between taxes and expenses. First, Texas courts consider taxes to be expenses. *See Rubin v. Gilmore,* 561 S.W.2d 231, 235 (Tex. Civ.App.—Houston [1st Dist.] 1977, no writ) (stating that regular expenses of a night club business include the gross receipt taxes owed from the sale of mixed beverages); *see also R.A. Corbett,* 678 S.W.2d at 175. Second, Texas courts consider taxes to be the kind of expenses that may be deducted from total receipts before net profits are calculated. *See G & W Marine v. Morris,* 471 S.W.2d 644, 647 (Tex.Civ.App.—Beaumont 1971, no writ) (quoting *Dealers' Granite Corp. v. Fau-*

*bion,* 18 S.W.2d 737, 739 (Tex.Civ.App.—Austin 1929, no writ)).

 Similarly, keeping in mind that the legislature may tax under its broad taxing powers unless the constitution prohibits the legislature from doing so, we hold that the legislature may impose a tax on the gross receipts of bingo game operations and that the Bingo Amendment to the Texas Constitution neither expressly nor impliedly prohibits the legislature's power to tax gross receipts from bingo games.

### CONCLUSION

We conclude that article III, section 47(b) of the Texas Constitution does not prohibit taxes on gross receipts of bingo operations. Therefore, we hold that the Bingo Enabling Act's imposition of taxes on bingo gross receipts was constitutional. Consequently, we overrule Licensees' two points of error and affirm the trial court's grant of the State's motion for summary judgment.