

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 21, 1998

The Honorable Jerry Patterson
Chair, Committee on Veteran Affairs &
  Military Installations
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. DM-495

Re: Whether the legislature may authorize a state agency to construe Texas Constitution article XVI, section 50, the home equity amendment (RQ-1167)

Dear Senator Patterson:

You ask whether the legislature, either by statute or by constitutional amendment approved by the voters, may authorize a state agency to construe the provisions of article XVI, section 50 of the Texas Constitution. The most recent amendment to article XVI, section 50 was approved by Texas voters in a general election held on November 4, 1997. The amendment added types of debt that may be enforced by foreclosure against a homestead, including an extension of credit secured by the borrower's equity in the homestead, popularly known as a "home equity loan." As your letter points out, the amendment has given rise to numerous questions regarding its construction. Section 50 does not authorize the legislature to enact general implementing legislation or empower a state agency to adopt interpretive rules. Consequently, the state is faced with an environment of uncertainty as to how lenders, builders, insurers, borrowers, and others may properly negotiate enforceable home equity loans. You tell us that the legislature seeks to appoint a state agency to resolve these complicated questions as they arise.

We cannot tell you in advance whether any particular legislative action you might take will be valid, but we can advise you of the basic legal principles governing your question.

We begin with your proposal to grant interpretive authority to a state agency by statute. Article III, section 1 of the Texas Constitution vests legislative power in the Texas Legislature.[1] This means, as a general rule, that the legislature has the power to enact any law that is not in violation of state or federal constitutional provisions.[2] And, where the legislature has established a sufficient standard of guidance on a particular policy of law, it may delegate power to executive

---

[1] Tex. Const. art. III, § 1 ("The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'").

[2] *De Shazo v. Webb*, 113 S.W.2d 519, 523 (Tex. 1938); *Brown v. City of Galveston*, 75 S.W. 488, 493 (Tex. 1903).

agencies to prescribe and administer the details of the law.[3] Any limitations on the legislature's power must be shown by express words in the constitution or by necessary implication.[4] When reviewing the legislature's power to enact a particular statute, courts apply a strong presumption that the statute is valid, and a court will not declare a statute invalid unless it is clearly unconstitutional.[5]

In general, then, the legislature may enact any law that is not in conflict with the constitution. Your particular question is whether the legislature may legally authorize and empower a state agency to construe and interpret the provisions of section 50 of the Texas Constitution as it now stands. The answer to your question, strictly read, is no. "[T]he Legislature has no authority to interpret or declare a matter of constitutional construction,"[6] nor may it delegate such authority to an administrative agency.[7] To do so, absent express constitutional authorization, would be to usurp the powers of the judiciary in violation of the separation of powers principles set out in article II, section 1 of the Texas Constitution.[8] Below we will discuss the interpretive powers that might be authorized by the constitution. But as section 50 now stands, neither the legislature nor any state agency has the power to declare definitively what it means. The ultimate power to construe constitutional provisions lies solely with the courts.[9]

This does not mean, however, that the legislature or a state agency may not in fact construe the constitution. Some provisions of the Texas Constitution give the legislature, a state agency, or a court the power to regulate in the subject area of the constitutional provision. For example, article V, section 24 provides that certain county officers may be removed from office "for incompetency, official misconduct, habitual drunkenness, *or other causes defined by law*," impliedly authorizing the legislature to construct causes for removal. (Emphasis added.) Other grants of regulatory authority are more explicit. Article III, section 47(b), provides: "The Legislature by law may

---

[3]*Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689-90 (Tex. 1992).

[4]*Brown v. City of Galveston*, 75 S.W. 488, 493 (Tex. 1903).

[5]*Shepherd v. San Jacinto Jr. College Dist.*, 363 S.W.2d 742, 743, 750-51 (Tex. 1962).

[6]*Powell v. State*, 17 Tex. Ct. App. 345, 350 (1884); *see Barnett v. State*, 62 S.W. 765, 769-77 (Tex. Crim. App. 1900) (Davidson, J., dissenting); Attorney General Opinion JM-1201 (1990) at 8.

[7]"The legislature has no strictly judicial functions; and has no power to delegate to a board a function which it does not itself possess." *Sun Oil Co. v. Potter*, 182 S.W.2d 923, 928 (Tex. Civ. App.--Austin 1944), *rev'd on other grounds*, 189 S.W.2d 482 (Tex. 1945).

[8]Article II, section 1 of the Texas Constitution provides: "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

[9]*See Hays County Appraisal Dist. v. Mayo Kirby Springs, Inc.*, 903 S.W.2d 394, 397 (Tex. App.--Austin 1995, no writ).

authorize and regulate bingo games . . . ." When given the power to implement constitutional provisions, the legislature may define terms that are not defined in the constitution itself, provided the definitions constitute reasonable interpretations of the constitutional language and do not do violence to the plain meaning and intent of the framers.[10]

Thus in *Schwenke v. State* the court held that an administrative agency designated by the legislature could define the causes for which a county officer could be removed from office under article V, section 24.[11] And in *Aerospace Optimist Club v. Texas Alcoholic Beverage Commission*,[12] the court upheld the legislature's interpretation of the term "proceeds" as used in the constitutional provision regarding bingo proceeds, saying: "The legislature's practical interpretation of a constitutional term can be a valuable aid in determining the meaning and intention of that term in cases of doubt."[13] In ways such as these, the legislature construes the constitution. While not binding on the courts, these constructions are given weight. Whether a legislative construction is a reasonable interpretation of the constitution ultimately remains a matter for the judiciary to decide.

Even where no implementing authority is given, a construction of a constitutional provision given by the legislature or an executive agency will be given weight by a court in determining the meaning of the provision.[14] A contemporaneous construction that has been acquiesced in and adhered to for a long period of time is entitled to great weight.[15] For example, the court in *Panas v. Texas Breeders & Racing Association*[16] considered a law regulating horse racing. The law was challenged on the grounds that it violated article III, section 47 of the constitution, which at that time prohibited "the establishment of lotteries . . . or other evasions involving the lottery principle, established or existing in other States."[17] The court of appeals held that the legislature's legalization of horse racing constituted an interpretation that horse racing did not violate the constitutional

---

[10]*Swearingen v. City of Texarkana*, 596 S.W.2d 157, 160 n.1 (Tex. Civ. App.--Texarkana 1979, writ ref'd n.r.e.) (citing *San Antonio Conservation Soc'y, Inc. v. City of San Antonio*, 455 S.W.2d 743 (Tex. 1970)).

[11]*Schwenke v. State*, 960 S.W.2d 227, 233 (Tex. App.--Corpus Christi 1997, pet. denied) ("Incompetence is merely one of the four grounds for removal from office set out in article V, section 24. Each of these grounds: incompetence, official misconduct, habitual drunkenness, or other causes defined by law, requires interpretation. That interpretation is left to the legislature and the courts.").

[12]886 S.W.2d 556 (Tex. App.--Austin 1994, no writ).

[13]*Id.* at 560.

[14]*Walker v. Baker*, 196 S.W.2d 324, 327 (Tex. 1946).

[15]*Director of the Dep't of Agric. & Env't v. Printing Indus. Ass'n*, 600 S.W.2d 264, 269 (Tex. 1980).

[16]80 S.W.2d 1020 (Tex. Civ. App.--Galveston 1935, writ dism'd w.o.j.).

[17]*Id.* at 1024.

prohibition against lotteries. Unless clearly wrong, the court said, a legislative construction of a constitutional provision will not be set aside.[18]

Certain provisions in the home equity amendment authorize legislative action, creating avenues for legislative or executive interpretations of those provisions. For example, section 50(a)(6) provides that an enforceable home equity loan is one that "permits a lender to contract for and receive any fixed or variable rate of interest *authorized under statute*." (Emphasis added.) And section 50(b) prohibits the sale or abandonment of a homestead without the consent of each owner and spouse of each owner "*given in such a manner as may be prescribed by law*." (Emphasis added.) The legislature has already incorporated into statutory law some of the provisions of section 50, even though not expressly instructed by the constitution to do so. Section 41.001 of the Property Code exempts homesteads from seizure for the claims of creditors, except for those claims listed in the statute, which claims mirror the debts listed in section 50(a)(1) through 50(a)(5) of article XVI.[19] And section 53.254, regarding the requirements of a lien on a homestead for a residential construction loan, incorporates some of section 50's requirements for a home improvement loan. To the extent that they construe the constitution, laws such as these are legislative interpretations and will be given weight by a court, unless clearly wrong.[20]

The home equity amendment gives no general implementing authority to the legislature. Nevertheless, given the legislature's plenary powers, we see no constitutional prohibition on the legislature authorizing a state agency to adopt rules implementing the requirements of section 50. Any such delegation of power would have to be consistent with the provisions of section 50, including those directing the state supreme court and the state Finance Commission to take certain actions with respect to home equity lending.[21] Again, while not binding on the courts, executive constructions will be given weight by a court in construing the constitution. Whether an agency's interpretation of section 50 conforms to the requirements of the constitutional provision ultimately will be a question for the courts.

This brings us to your proposal to amend the constitution. The constitution may be amended to create any law that the voters see fit to approve[22] and that is not inconsistent with the United States

---

[18]*Id.*

[19]The debts enforceable against a homestead listed in section 41.001 are debts for: (1) purchase money; (2) taxes; (3) home improvements; (4) owelty of partition; and (5) refinance of a lien. Curiously, section 41.001 does not include as permissible encumbrances home equity loans or reverse mortgages as provided for in section 50(a)(6) and 50(a)(7) of the constitution.

[20]*See In re Bradley*, 960 F.2d 502, 511 n.18 (5th Cir. 1992), *cert. denied*, 507 U.S. 971 (1993); *In re Moody*, 862 F.2d 1194, 1201 (5th Cir. 1989).

[21]*See infra* note 26.

[22]"The power to amend, revive or re-enact a law rests with the people of the State. They can amend the
(continued...)

Constitution.[23]  While the purpose of a constitution normally is to establish the basic and general foundation of a governmental system, in Texas, as one court has noted, "[o]ur Constitution is distinguished for the particularity of its provisions and the details into which it enters in reference to matters of government."[24]  This statement is no more clearly evidenced than by the home equity amendment, which, in nineteen paragraphs with over forty subsections, prescribes in detail the requirements for debts enforceable by foreclosure on a homestead.  Although the wisdom of writing such details into the constitution has been questioned,[25] it is nevertheless not prohibited.

As we discussed above, the legislature, a state agency, or a court may be given the power to implement constitutional provisions.  While section 50 contains no general grant of implementing authority, it directs the state Finance Commission and the state supreme court to take certain specific actions with respect to home equity lending.[26]  We see no prohibition on section 50 being similarly amended to include a grant of authority to the legislature or to a state agency to regulate with respect to some or all of its provisions, and in this way construe the constitution.  Still, in such a case, the courts must decide whether any statute or regulation is consistent with the constitution.

In theory, the state constitution could be amended to give a state agency definitive interpretive powers over constitutional provisions, subject to the requirements of the federal

---

[22](...continued)
Constitution in any particular they desire." *Stephens v. State*, 133 S.W.2d 130, 131 (Tex. Crim. App. 1939).

[23]A state constitutional provision is invalid if it conflicts with the federal Constitution. *See Reynolds v. Sims*, 377 U.S. 533, 584 (1964).

[24]*Brown*, 75 S.W. at 493.

[25]"Procedural details should not be written into constitutions, but state constitutions should provide for reasonable procedural regulations by legislative enactment." *Ex parte Davis*, 574 S.W.2d 166, 169 n.4 (Tex. Crim. App. 1978).

The United States Supreme Court said in *M'Culloch v. Maryland*, 17 U.S. 316, 407 (4 Wheat.) (1819):

> A constitution, to contain an accurate detail of all the subdivisions of which its great powers will admit, and of all the means by which they may be carried into execution, would partake of the prolixity of a legal code, and could scarcely be embraced by the human mind.  It would, probably, never be understood by the public.  Its nature, therefore, requires, that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects, be deduced from the nature of the objects themselves.

[26]*See* Tex. Const. art. XVI, § 50(r) (directing supreme court to promulgate rules for expedited home equity loan foreclosure proceedings); *id.* § 50(s) (directing Finance Commission to research availability, quality, prices, and practices of home equity financial services and report annually to legislature).

Constitution.[27] As we discussed above, a statute authorizing a state agency to construe section 50 of the constitution as it now stands would usurp the power of the judiciary branch. However, article II, section 1 provides for the separation of legislative, judicial, and executive functions "except in the instances . . . expressly permitted" in the constitution. The interpretive commentary to the constitution explains:

> The Texas Constitution itself vests in each of the three departments certain powers which, in their essential nature, have not belonged to it. Article II recognizes this when it states that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in instances herein expressly permitted."
>
> . . . .
>
> Thus, it is not exactly correct to state the principle of separation of powers as absolutely prohibiting performance by one department of acts which by their essential nature belong to another. Rather, the correct statement is that a department may constitutionally exercise any power whatever its essential nature, which has, by the constitution, been delegated to it; but that it may not exercise powers not so constitutionally granted which from their essential nature do not fall within its division of governmental functions.[28]

In other words, each branch of government may exercise those powers that are essentially within its area of function—legislative, executive, or judicial—and may exercise powers outside of its area if expressly authorized by the constitution to do so. The interpretive commentary cites such grants of power already in the constitution:

> [T]he Constitution expressly permits the Supreme Court to exercise the essentially legislative power of making certain rules of procedure, and the executive power to appoint a clerk. The executive has been granted the legislative veto, and the judicial right of pardoning. The legislature has been given the judicial powers of impeachment and the right to judge of the qualifications and elections of its own members; and the Senate, the essentially executive power of participating in the appointment of officials.[29]

---

[27]*See supra* note 23.

[28]Tex. Const. art. II, § 1 (interp. commentary) (Vernon 1997).

[29]*Id.*

Thus the constitution could be amended to give to an executive agency judicial-type interpretive powers with respect to the home equity amendment.

We do not advise you on the wisdom of this or any other particular action. We believe, however, that both statutory and constitutional avenues exist for the legislature to authorize a state agency to regulate with respect to the home equity amendment.

## S U M M A R Y

The legislature has the power to enact any law that is not in violation of state or federal constitutional provisions. It may not, however, infringe upon the power of the judiciary to construe and interpret the constitution. Thus while the legislature may not, absent express constitutional authority, empower a state agency to definitively construe article XVI, section 50 of the Texas Constitution—the home equity amendment—the legislature may authorize a state agency to adopt rules implementing the requirements of the home equity amendment. Whether any legislative or administrative action is consistent with the requirements of the constitution is ultimately a question for the courts to decide.

The constitution may be amended to create any law that the voters see fit to approve. The legislature may propose, and the voters may approve, a constitutional amendment authorizing a state agency to implement or construe provisions of the constitution.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Barbara Griffin
Assistant Attorney General