ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

April 19, 2007

The Honorable Jane Nelson
Chair, Committee on Health
   and Human Services
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0541

Re: Whether the Legislature may authorize electronic pull-tab bingo by statute without amending the Texas Constitution   (RQ-0547-GA)

Dear Senator Nelson:

You request an opinion about the constitutionality of proposed legislation that would legalize the use of "electronic pull-tab bingo" by nonprofit organizations that are authorized by law to conduct charitable bingo.[1] Your question relates specifically to Senate Floor Amendment 24 to House Bill 3 of the Seventy-ninth Regular Legislative Session (the "Floor Amendment"). *See* Request Letter, *supra* note 1, at 1; *see also* Tex. H.B. 3, 79th Leg., R.S. (2005), S.J. OF TEX., 79th Leg., R.S. 1807–13 (2005) (Senate Floor Amendment No. 24).[2] Although House Bill 3 was not adopted and the Floor Amendment did not become law, you are concerned that similar legislation may be considered in the future. *See* Request Letter, *supra* note 1, at 3. You ask whether electronic pull-tab bingo as described by the Floor Amendment would be constitutional under Texas Constitution article III, section 47(b), which authorizes the Legislature to adopt laws authorizing and regulating bingo games conducted by various charitable entities. *See id.* at 1–2.

## I.     Legal Background

Article III, section 47(a) of the Texas Constitution provides that "[t]he Legislature shall pass laws prohibiting lotteries and gift enterprises in this State," subject to specific exceptions. TEX. CONST. art. III, § 47(a). A lottery is composed of three elements: (1) a prize or prizes; (2) the award or distribution of the prize or prizes by chance; and (3) the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating. *See Brice v. State*, 242 S.W.2d 433, 434 (Tex. Crim. App. 1951); *see also State v. Socony Mobil Oil Co.*, 386 S.W.2d 169,

---

[1]*See* Letter from Honorable Jane Nelson, Chair, Committee on Health and Human Services, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Oct. 24, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*Available at* http://www.legis.state.tx.us.

172 (Tex. Civ. App.—San Antonio 1964, writ ref'd n.r.e.).  This definition has been incorporated by the Penal Code, which provides that a "lottery" is

> any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win anything of value, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or some other name.

TEX. PENAL CODE ANN. § 47.01(7) (Vernon 2003).

Applying legislation that implemented the constitutional prohibition against lotteries, a 1976 judicial decision, *State v. Amvets Post No. 80*, held that a bingo game operated by a veterans organization was illegal.  *See State v. Amvets Post No. 80*, 541 S.W.2d 481, 482 (Tex. Civ. App.—Dallas 1976, no writ).  The participants purchased cards showing numbered spaces, numbers were selected at random and called out, and cash prizes were awarded to the first person to cover numbers in a designated pattern.  Based on these facts, the court found the game to be a "scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win anything of value."  *Id.* at 482 (quoting and interpreting definition of "lottery" in Penal Code, formerly section 47.01(6), renumbered as section 47.01(7)).[3] The court held that the bingo game came squarely within the statutory definition of "lottery."  *See id.*  The bingo game was a lottery even though part of the revenue was contributed to charity and no one realized any gain from it aside from personal winnings.  *See id.* at 483.

In 1979, shortly after the *Amvets* opinion, the Legislature proposed an amendment to article III, section 47 (the "bingo amendment") allowing the Legislature to authorize and regulate bingo games subject to specific constitutional requirements, and the voters adopted it in 1980.  *See* Tex. S.J. Res. 18, 66th Leg., R.S., 1979 Tex. Gen. Laws 3221 (proposed constitutional amendment); Texas Constitution, Amendments Adopted in 1979 and 1980, 1981 Tex. Gen. Laws 4227 (adoption of amendment).  The bingo amendment adopted subsections 47(b) and (c), which provide in part:

> (b)  The Legislature by law may authorize and regulate bingo games conducted by a church, synagogue, religious society, volunteer fire department, nonprofit veterans organization, fraternal organization, or nonprofit organization supporting medical research or treatment programs. . . .

> (c)  The law enacted by the Legislature authorizing bingo games must include [a requirement that organizations conducting

---

[3]*See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 965 (adopting Penal Code section 47.01(6)), *amended by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3690–91 (renumbering Penal Code section 47.01(6) as section 47.01(7)).

> bingo make reports to the comptroller about amount and use of proceeds collected from bingo games].

TEX. CONST. art. III, § 47(b)–(c). Bingo games authorized by a law adopted pursuant to article III, section 47(b) are excepted from the prohibition against lotteries in section 47(a). *See id.* § 47(a).

In 1981, the Legislature adopted the Bingo Enabling Act (the "Act") pursuant to the authorization in the bingo amendment. *See* Act of Aug. 11, 1981, 67th Leg., 1st C.S., ch. 11, 1981 Tex. Gen. Laws 85. The Act is now found at Occupations Code chapter 2001 and is administered by the Texas Lottery Commission. *See* TEX. OCC. CODE ANN. §§ 2001.001, .051, .054 (Vernon 2004). It provides for licensing certain charitable and fraternal organizations to conduct bingo games. *See id.* § 2001.101. The Act also governs fiscal matters such as permissible expenses, accounting for bingo proceeds, charitable distributions, and taxes. *See id.* §§ 2001.451–.459 (bingo accounts and use of proceeds), §§ 2001.501–.515 (taxes and prize fees).

## II.    Proposed Legislation

The Floor Amendment would have amended the Act to authorize "electronic pull-tab bingo," a game it defined as "an electronic version of pull-tab bingo that is played on a card-minding device or electronic monitoring terminal using electronic pull-tab bingo tickets." Tex. H.B. 3, 79th Leg., R.S. (2005); S.J. of TEX., 79th Leg., R.S. 1807 (2005) (proposing adoption of Occupations Code section 2001.002(9-b)). A "card minding device" as defined by commission rule is:

> [a]ny mechanical, electronic, electromechanical or computerized device, and including related hardware and software, that is interfaced with or connected to equipment used to conduct a game of bingo and which allows a player to store, display, and mark a bingo card . . . . A card-minding device shall not be a video lottery machine . . . .

16 TEX. ADMIN. CODE § 402.100(5) (2006) (Tex. Lottery Comm'n, Definitions); *see also id.* § 402.302(a)(2)(A) (Tex. Lottery Comm'n, Card-Minding Systems) (defining "card-minding device" as a component of a card-minding system).

Pull-tab tickets are at present defined by the Act as "tickets with perforated break-open tabs, made of paper or paper products, the face of which is covered or otherwise hidden from view to conceal numbers, letters, or symbols, some of which have been designated in advance as prize winners." TEX. OCC. CODE ANN. § 2001.002(24) (Vernon 2004) (defining "pull-tab bingo"). An "[e]lectronic pull-tab bingo ticket" as defined by the Floor Amendment would be "an electronic ticket used in electronic pull-tab bingo that is issued from a finite deal of tickets in which some of the tickets have been designated in advance as winning tickets."[4] Tex. H.B. 3, 79th Leg., R.S. (2005);

---

[4]While the Texas courts have not addressed any kind of pull-tab game, a federal court has described electronic pull-tab games as follows:

(continued...)

S.J. of TEX., 79th Leg., R.S. 1807 (2005) (proposing adoption of Occupations Code section 2001.002(9-c)).  The Floor Amendment would also have permitted the use of a computer program or electronic equipment to create, shuffle, store, and configure electronic pull-tab bingo tickets, to distribute these to the screens where the game is played, and to account for electronic credits purchased, played, or won.  *See* Tex. H.B. 3, 79th Leg., R.S. (2005); S.J. of TEX., 79th Leg., R.S. 1807–09 (2005) (proposing adoption of Occupations Code sections 2001.002(26-a) and 2001.4091 to define and authorize use of a "site controller").  A "player account card," dispensed by a cashier or terminal, could be used to enable or track the play of such electronic games, track electronic credits purchased, played, or won, and redeem such credits through a cashier or a terminal.  *See* S.J. of TEX., 79th Leg., R.S. 1807–09 (2005) (proposing adoption of Occupations Code sections 2001.002(20-a) (defining "[p]layer account card") and 2001.002(20-b) (cashier or terminal)).

## III.    Legal Analysis

With this background in mind, we consider whether Texas Constitution article III, section 47(b) authorizes the Legislature to provide for "electronic pull-tab bingo" as set out in the Floor Amendment.  The constitutional provision refers to "bingo games" but does not define this term. *See* TEX. CONST. art. III, § 47(b)–(c).  In interpreting a constitutional provision, the courts begin with the text of the constitution, but if there is doubt as to the meaning of the literal text, they will consider the intent of the people who adopted the provision.  *See Wentworth v. Meyer*, 839 S.W.2d 766, 767 (Tex. 1992); *Aerospace Optimist Club v. Tex. Alcoholic Beverage Comm'n*, 886 S.W.2d 556, 558 (Tex. App.—Austin 1994, no writ); Tex. Att'y Gen. Op. No. GA-0103 (2003) at 5. Moreover, "[w]hen determining the purpose of a [constitutional] provision, we will consider the evil to be remedied and the good to be accomplished by that provision." *Aerospace Optimist Club*, 886 S.W.2d at 559–60 (quoting *Brown v. Meyer*, 787 S.W.2d 42, 45 (Tex. 1990)).

We first consider the purpose of the bingo amendment.  The court in *Aerospace Optimist Club*, considering whether article III, section 47(b) barred the state from taxing bingo proceeds, stated that the "evil to be remedied" by the constitutional amendment legalizing bingo "was selective enforcement of laws prohibiting gambling and lotteries." *Id.* at 560. *See* HOUSE STUDY GROUP, SPECIAL LEGISLATIVE REPORT, CONSTITUTIONAL AMENDMENT ANALYSIS (Apr. 30, 1980) at 21 (law against bingo is selectively enforced to permit bingo games held by religious and non-profit organizations); TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS, FOR ELECTION NOVEMBER 4, 1980, at 9–10 (law enforcement authorities in some communities do not enforce the prohibition against bingo games).  The "'good to be accomplished,' or the overall purpose of the amendment, was thus the legalization of bingo operations to create uniformity in law enforcement and to prevent otherwise law-abiding citizens from committing

---

[4](...continued)

> There is now a computerized version of pull-tabs.  The computer randomly selects a card for the gambler, pulls the tab at the gambler's direction, and displays the result on the screen.  The computer version . . . has a fixed number of winning cards in each deal.

*Cabazon Band of Mission Indians v. Nat'l Indian Gaming Comm'n*, 14 F.3d 633, 635 (D.C. Cir. 1994).

criminal acts by participating in bingo games." *Aerospace Optimist Club*, 886 S.W.2d at 560. The purpose of the bingo amendment was to legalize and regulate the kind of bingo game conducted by a veterans organization in *Amvets. See Amvets*, 541 S.W.2d at 482–83.

To ascertain the intent of the people who adopted the constitutional provision, we may look to other sources for the meaning of "bingo" as used in the bingo amendment. *See Aerospace Optimist Club*, 886 S.W.2d at 560 (citing *Wentworth*, 839 S.W.2d. at 767). Legislative construction and contemporaneous exposition of a constitutional term can be a valuable aid in determining the meaning and intention of a term used in the constitution. *See id.* (citing *Am. Indem. Co. v. City of Austin*, 246 S.W. 1019, 1023 (Tex. 1922)); *see also Hill County v. Sheppard*, 178 S.W.2d 261, 263 (Tex. 1944) (legislative definition of a term adopted near in time to a constitutional provision that includes the same term will be given great weight in determining meaning of constitutional term).

The Bingo Enabling Act was adopted in 1981, soon after the voters' ratification of the bingo amendment, and it thus provides a contemporaneous legislative understanding of the meaning of "bingo games" in article III, section 47(b). The 1981 Act defined "[b]ingo" as "a specific game of chance, commonly known as bingo or lotto, in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random." Act of Aug. 11, 1981, 67th Leg., 1st C.S., ch. 11, § 2, 1981 Tex. Gen. Laws 85, 85; *see also id.* § 39, at 100 (similar definition of "bingo" in a section on unlawful bingo). The term "card" in the definition indicates that the Legislature had in mind traditional bingo played on cards when it implemented the bingo amendment. Although a 1995 enactment deleted "card" from the statutory definition of bingo, the same bill declared that "[n]othing in this Act shall be construed as authorizing any game using a video lottery machine or machines," describing such a machine as an electronic video game machine, that upon the insertion of cash enables the player to play a game from which he may receive free games or credits that can be redeemed for cash. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 1057, §§ 1, 10, 1995 Tex. Gen. Laws 5222, 5225. The deletion of the word "card" from the definition of "bingo" does not mean that the Legislature thought that bingo as authorized by article III, section 47(b) could be played on an electronic machine or device.

In addition, the legislative history of article III, section 47(b) supports the view that this provision relates to the *Amvets* type of bingo game. A 1980 report by the House Study Group on the proposed bingo amendment describes bingo as involving social interaction. "Bingo is a social function. It brings people together who want to be together. Its social nature is one of the ways it differs from games like roulette or slot machines." HOUSE STUDY GROUP, SPECIAL LEGISLATIVE REPORT, CONSTITUTIONAL AMENDMENT ANALYSIS (Apr. 30, 1980) at 22; *see* TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS, FOR ELECTION NOVEMBER 4, 1980, at 10 (stating that bingo games provide an opportunity for entertainment, social gathering, and relaxation for a significant part of a community, in particular, elderly persons). This aspect of bingo indicates that when the bingo amendment was adopted, the game of bingo was understood to be the bingo game described in *Amvets*, and not a game played electronically. The social interaction present in traditional bingo is diminished, if not eliminated, in a game played by an individual on a computer monitor. The Supreme Court of Wyoming, in an exhaustive opinion determining that electronic bingo was not "bingo" within a 1971 statute, noted that "[b]ingo-type games contemplate a group activity, often social." *Fraternal Order of Eagles Sheridan Aerie No. 186, Inc. v. State ex rel. Forwood*, 126 P.3d 847, 859–60 (Wyo. 2006).

## IV.    Conclusion

For these reasons, we believe that a Texas court would find that "bingo" within article III, section 47(b) does not include "electronic pull-tab bingo" as described by Senate Floor Amendment No. 24 to House Bill 3 of the Seventy-ninth Regular Legislative Session.  The electronic pull-tab bingo game would not be excepted by section 47(b) from the prohibition against lotteries in section 47(a) and accordingly would be unconstitutional under article III, section 47(a).

## S U M M A R Y

Texas Constitution article III, section 47(b) authorizes the Legislature to enact legislation permitting charitable entities to conduct bingo games for charitable purposes. The constitutional authorization for charitable bingo does not include "electronic pull-tab bingo," which an unenacted bill of the Seventy-ninth Regular Legislative Session would have authorized. The proposed legislation would be unconstitutional under article III, section 47(a).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee