The STATE of Texas, Appellant,

v.

AMVETS POST NUMBER 80 et al., Appellees.

No. 19024.

Court of Civil Appeals of Texas, Dallas.

Aug. 5, 1976.

Henry Wade, Dist. Atty., Edgar A. Mason, Asst. Dist. Atty., Dallas, for appellant.

GUITTARD, Justice.

The district attorney brought this suit on behalf of the State under Tex.Rev.Civ.Stat. Ann. art. 4667 (Vernon Supp.1975) to restrain Amvets Post Number 80 and its officers and members from operating bingo games in which the participants pay for the privilege of playing and prizes are determined by chance. The trial court granted a temporary injunction restraining the defendants from operating the games insofar as persons other than Amvet members and their families are allowed to participate, but the court otherwise denied the relief sought. From this denial the State appeals. We hold that the game is an illegal lottery, whether or not restricted to members and their families, and, therefore, that the State is entitled to the broader injunction.

■ The term "lottery" is defined in Tex. Penal Code Ann. § 47.01(6) (Vernon 1974) as follows:

"Lottery" means any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win anything of value, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or some other name.

Tex. Penal Code Ann. § 47.03 (Vernon 1974) provides that a person commits an offense if he intentionally or knowingly

. . .

(5) for gain, sets up or promotes any lottery or sells or offers to sell or knowingly possesses for transfer, or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any lottery.

The undisputed facts bring the case squarely within the definition of a "lottery" in § 47.01(6). The players purchase bingo cards from the Post for a fixed charge. The object of the game is to cover the numbered spaces on the card in a designated pattern as numbers are selected at random by a mechanical device and called out to the players. The first player to complete the pattern receives a cash prize ranging from $35 to $500, depending upon the pattern designated. From this evidence it is clear that the game is, in the words of the statute, a "scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win anything of value."

■ Denial of the broader injunction sought cannot be justified on the theory that if the game is restricted to members and their families it is not operated "for gain," as prohibited by § 47.03(5). The trial court expressly found and recited in its order that the Post realizes a financial gain.

The evidence shows that the games are held three times a week and are undertaken for the express purpose of raising money. The revenues are used for the Post's general operating expenses as well as for charitable contributions. Obviously such proceeds are a regular and an expected part of the scheme. *Cf. Wink v. Griffith Amusement Co.,* 129 Tex. 40, 100 S.W.2d 693 (1936). Even if all the proceeds were contributed to charity, the game would still be an enterprise undertaken "for gain." A gain is no less a gain if it is contributed to charity. Consequently, a lottery is no less a lottery if the proceeds are used for charitable purposes. *See Tussey v. State,* 494 S.W.2d 866 (Tex.Crim.App.1973).

Neither can such a game escape condemnation as a lottery on the ground that no individual received any benefit other than personal winnings. Other gambling statutes provide for a defense if the accused shows that the gambling occurred in a private place, that no person received any economic benefit other than personal winnings, and that the risk of losing and the chance of winning was the same for all participants. Tex.Penal Code Ann. §§ 47.02(b), 47.04(b) (Vernon 1974). No such defense is provided to the charge of operating a lottery under § 47.03.

Accordingly, we reverse the order of the district court insofar as it denies the complete relief sought by the State and we issue our temporary injunction restraining Amvets Post Number 80 and its officers and members from setting up, operating or promoting for gain bingo games or any other lottery scheme whereby one or more prizes are distributed by chance among persons paying for the privilege of participating, whether or not the participants are limited to members of the Post and their families, until a final order in this cause is issued by the trial court.

We observe, however, that we can find no good reason why the State should have sought a temporary injunction rather than an early setting on a permanent injunction. Such an early setting on the merits would avoid duplication of effort both in the trial court and on appeal, and would cause little more disruption of the docket than a hearing on an application for temporary injunction. *See Southwest Weather Research, Inc. v. Jones,* 160 Tex. 104, 327 S.W.2d 417, 421–22 (1959).

Reversed and rendered.