TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00061-CR


 NO. 03-01-00062-CR






Larry Dale Baxter, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-00-0246-S & B-00-0248-S, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING







 Appellant Larry Dale Baxter was convicted, in a jury trial, of the offenses of engaging
in organized criminal activity and of gambling promotion. See Tex. Pen. Code Ann. §§ 71.02(a)(2)
(West Supp. 2002), 47.03(a)(1) (West 1994). The trial court assessed appellant's punishment for
engaging in organized criminal activity at confinement in a state jail facility for a period of two years
and a fine of $500; imposition of sentence was suspended and appellant was granted community
supervision for two years and ordered to pay his fine and costs. The trial court assessed appellant's
punishment for gambling promotion at confinement in the county jail for a period of one year and
a fine of $500; imposition of sentence was suspended and appellant was granted community
supervision for one year and ordered to pay his fine and costs.

 Appellant asserts that the evidence is insufficient to support the jury's verdicts and
that the trial court erred in admitting inadmissible evidence, in excluding admissible evidence, in
improperly curtailing jury voir dire, in charging the jury, and in refusing to allow a sitting juror to
be interrogated. The judgments will be affirmed.


Sufficiency of Evidence


 In his sixth and seventh points of error, appellant insists that the evidence is
insufficient to support the jury's verdicts. In reviewing the legal sufficiency of the evidence, the
relevant question is whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements of the crime beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Patrick v. State, 906 S.W.2d
481, 486 (Tex. Crim. App. 1995); Aiken v. State, 36 S.W.3d 131, 132 (Tex. App.--Austin 2000, pet.
ref'd). The standard of review is the same whether the evidence is direct or circumstantial, or both. 
See Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); Banda v. State, 890 S.W.2d 42,
50 (Tex. Crim. App. 1994).

 A person commits the offense of engaging in organized criminal activity if, with the
intent to establish, maintain, or participate in a combination or the profits of a combination, he
commits or conspires to commit any gambling offense punishable as a Class A misdemeanor. Tex.
Pen. Code. Ann. § 71.02(a)(2) (West Supp. 2002). "Combination" means three or more persons who
collaborate in carrying on criminal activities. Id. § 71.01(a). A person commits the Class A
misdemeanor offense of gambling promotion if he intentionally or knowingly operates or participates
in the earnings of a gambling place. Id. § 47.03(a)(1)(d) (West 1994). "Gambling Place" means any
real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which
is the making or settling of bets. Id. § 47.01(3). "Bet" means any agreement to win or lose
something of value solely or partially by chance. Id. § 47.01 (1) (West Supp. 2001).

 In appellate cause number 3-01-00061-CR, the indictment charged that on or about
May 6, 1999, appellant 


 did then and there, with intent to establish, maintain, or participate in a combination
or in the profits of a combination, said combination consisting of LARRY DALE
BAXTER, SHANNON CARPENTER, CINDY RICHARDS, AND JERRY DEAN
CLEMENTS, who collaborated in carrying on the hereinafter described criminal
activity, commit the offense of Gambling Promotion, to-wit: by operating and
participating in the earnings of a gambling place, namely: a building located at 1601
Harrison, San Angelo, Texas, by then and there making and settling of bets.



 A San Angelo Police SWAT team executed a search warrant and searched the house
located at 1601 Harrison, in the city of San Angelo. When they entered the house, the officers found
a craps table, dozens of dice, thousands of dollars in cash, and a notebook keeping account of debts. 
One of the windows was boarded up so the craps table could not be seen from outside the house. 
Signs posted inside the home declared "no checks, no credit, cash only." 

 Evidence shows that appellant assisted by Clements, Carpenter, and Richards
conducted craps games in the building located at 1601 Harrison in San Angelo, where bets were
made and settled. Appellant furnished free drinks and barbecue to those who participated in the dice
games. Appellant used a dice table similar to those used in well known casinos. Many citizens in
the community participated in the dice games conducted by appellant and the other alleged
individuals. Large amounts of money--thousands of dollars--were bet and lost. To prove appellant
guilty of the offense charged, it was not necessary to show that he profited from the games. 
However, there is ample evidence that he did.

 The jury as the trier of fact could rationally find from the direct and circumstantial
evidence, viewed in the light most favorable to the prosecution, that appellant was guilty, beyond
a reasonable doubt, of intentionally participating in a combination with Clements, Carpenter, and
Richards to commit the Class A misdemeanor gambling offense of gambling promotion by
intentionally and knowingly using the place alleged where bets were made and settled. The evidence
is sufficient to support the jury's verdict finding appellant guilty of engaging in organized criminal
activity. Appellant's sixth point of error is overruled.

 In appellate cause number 3-01-00062-CR, it was charged that on or about March 31,
1999, appellant, 


 did then and there, with intent to establish, maintain, or participate in a combination
or in the profits of a combination, said combination consisting of LARRY DALE
BAXTER, JERRY DEAN CLEMENTS, AND ROBERT FAIRCHILD, who
collaborated in carrying on the hereinafter described criminal activity, commit the
offense of GAMBLING PROMOTION, to-wit: by operating and participating in the
earnings of a gambling place, namely: a building located at 1122 E. 22nd, San
Angelo, Texas, by then and there making and settling of bets. 



This case was tried jointly with cause number 3-01-00061-CR. The jury found appellant guilty of
the lesser included offense of gambling promotion. The evidence is amply sufficient for the jury to
rationally find beyond a reasonable doubt that appellant used a building located at 1122 E. 22nd in
San Angelo to intentionally or knowingly operate a gambling place where bets were made and
settled. Appellant's seventh point of error is overruled.

Admission of Affidavit for Search Warrant


 In his first point of error, appellant asserts that the trial court erred in admitting in
evidence, over his objection, an affidavit for a search warrant and the warrant. During the testimony
of the State's first witness, San Angelo police officer Dick Brock, it was established that Brock had
drafted and executed an affidavit and obtained from a magistrate a warrant to search the house at
1601 South Harrison in San Angelo. The State offered and the court admitted in evidence the
affidavit and the warrant over appellant's timely hearsay objection. An objection that proffered
evidence is "hearsay" is sufficiently specific to require appellate review. See Tex. R. Evid. 103
(a)(1); Tex. R. App. P. 33.1(a)(1)(A), (2)(A); Lankston v. State, 827 S.W.2d 907, 910 (Tex. Crim.
App. 1992). (1)

 Admitting in evidence an affidavit for a search warrant over objection has generally
been considered error and often reversible error. (2) The Court of Criminal Appeals has observed that
"[t]aking note of the number of instances in which this court has found it necessary to reverse
judgments of conviction on account of the reception in evidence of the recital of facts embraced in
the affidavit for the search warrant, the continued frequency with which the error is repeated is the
subject of wonder." Hamilton v. State, 48 S.W.2d 1005, 1006 (Tex. Crim. App. 1932). Many cases
have found that the admission in evidence of affidavits for search warrants over objection constitutes
error. See Figueroa v. State, 473 S.W.2d 202, 204 (Tex. Crim. App. 1971); Tucker v. State, 339
S.W.2d 64, 64 (Tex. Crim. App. 1960); Zorn v. State, 321 S.W.2d 90, 90 (Tex. Crim. App. 1959);
Hicks v. State, 318 S.W.2d 652, 652 (Tex. Crim. App. 1958); Dillon v. State, 2 S.W.2d 251, 251
(Tex. Crim. App. 1928); Pratt v. State, 748 S.W.2d 483, 484 (Tex. App.--Houston [1st Dist.] 1988,
pet. ref'd). The admission of the affidavit and warrant, over appellant's objection, was error. We
must decide whether the error is reversible error. Cases decided before the adoption of the Rules of
Appellate Procedure were said to turn on the facts of each particular case. See Figueroa, 473 S.W.2d
at 204; Hamilton, 48 S.W.2d at 1005; see akso Torres v. State, 552 S.W.2d 821, 824 (Tex. Crim.
App. 1977); Doggett v. State, 530 S.W.2d 552, 556-67 (Tex. Crim. App. 1975).

 The Rules of Appellate Procedure now provide the rule for determining reversible
error. See Tex. R. App. P. 44.2. Other than constitutional error, any error must be disregarded
unless it affects substantial rights of the defendant. Id. 44.2(b). The violation of a rule of evidence
in the admission of evidence, as in this case, is considered non-constitutional error. See Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997); Tate v. State, 988 S.W.2d 887, 890 (Tex. App.--Austin 1999, pet. ref'd). Similarly,
the erroneous exclusion of defensive evidence is not constitutional error if the trial court's ruling
merely offends the rules of evidence. See Miller v. State, 42 S.W.3d 343, 346 (Tex. App.--Austin
2001, no pet.).

 A defendant's substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury's verdict. Morales v. State, 32 S.W.3d 862, 867
(Tex. Crim. App. 2000) (citing King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). A
criminal conviction should not be overturned for non-constitutional error if the appellate court, after
examining the record as a whole, has fair assurance that the error did not influence the jury, or had
but slight effect. Id. (citing Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). In
assessing the likelihood that the jury's decision was adversely affected by the error, the appellate
court should consider everything in the record, including any testimony or physical evidence
admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character
of the alleged error and how it might be considered in connection with other evidence in the case. 
The reviewing court might also consider the jury instruction given by the trial judge, the State's
theory and any defensive theories, closing arguments and even voir dire, if material to appellant's
claim. Id. (citing Llamas v. State, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000)).

 The affidavit that was erroneously admitted in evidence was a seven-page instrument
comprised of hearsay received by the affiant between December 11, 1997 and May 5, 1999. Much
of the information was second-hand and third-hand hearsay coming from unnamed informers. 
However, the record affirmatively shows by a statement of defense counsel at the charging
conference that to that point the affidavit had not been published to the jury. The record does not
show that the jurors ever knew the contents of the affidavit and warrant other than through defense
counsel's extended, penetrating, caustic cross-examination of the affiant Brock and another police
officer. Defense counsel cross-examined the affiant Brock and police officer Dennis McGuire, one
of Brock's informers, concerning the information contained in the affidavit. Counsel elicited
testimony and admissions from the officers casting substantial doubt about the truthfulness of a
considerable part of the information included in the affidavit. (3) Then in closing argument, defense
counsel argued at length that Brock's affidavit contained thirty-one lies which the defense had
exposed during cross-examination of Brock. In part defense counsel argued:


[Y]ou saw Detective Brock up here showing you a list of so many lies that it was
embarrassing. I mean, he took a sworn document--and when I say sworn to, people,
I mean these judges have to rely on that they're telling the truth. . . . And what is so
frightening about what Detective Brock brought you is after he knew it was all lies,
after we went over. . . thirty-one of them, that he--through his investigation, he found
out that they were lies. . . . When faced with all these lies in the sworn document that
he'd given the Judge, what did he say? Well, I still believe my old snitch. . . . Can
you throw all these names in here and slander all these people? How about this list
of people?


Defense counsel then named a number of citizens about whom he had cross-examined Brock because
they had been named in the affidavit as participants in the alleged unlawful dice games. Counsel
stressed that among these citizens named were a former Tom Green County elected official and a
prominent lawyer practicing in San Angelo. Counsel continued:


I don't think it's okay to slander and just make up stuff and take some old boy that's
on felony probation, try to work out a deal with him, get him to tell you some lies so
you can get a search warrant. Because you know what, people, the Judge doesn't
issue a search warrant unless he finds probable cause. If all that stuff was in there
was true, they'd have had probable cause. If there was a door man, somebody taking
money at the door, then you got an illegal game if you're charging, the house has an
advantage. . . . The house has an advantage, it's an illegal game. That's all over that
affidavit, that's all over Brock's testimony. Because if what Brock told that Judge
was true, what Larry did was against the law. . . .


 [The magistrate signed the warrant] because he believed Brock would do what's right
and tell him the truth. And not only did Brock lie to him about what he put in there,
but he doesn't even have the respect for you to come in here and say, "I'm sorry
about that. You know, I-he gave me that information, I put it in there, I found out
it was wrong. I wish I'd have known it was wrong." Well, what's Dick supposed to
do? How about investigate it? How about these dates these games are going on? 
How about go down and look and see if Baxter was even there? He's on duty.


 Then it gets worse, if it can. After you take this search warrant that slanders
all these good people over here in San Angelo, then he calls in what, a SWAT team. 
A SWAT team to go into a private home where guys are throwing some dice and
having a beer. Would the Judge have let him go in there if he'd have known the
truth? Nah, no way. No Judge would ever in the world have signed that warrant. 
But Brock lied to him.



 Appellant offered no testimony in his defense. However, throughout the trial, in voir
dire, in cross-examination, and in closing jury argument, appellant presented a consistent defensive 
theory. Appellant maintained there was no evidence he was acting in an unlawful combination as
alleged and that the dice games were fair and not unlawful. The defense attempted to show this by
cross-examination and argued that: (1) Brock had only read about dice games in a book and did not
understand dice games, (2) Brock lied at least thirty-one times in the affidavit by which he obtained
a search warrant, (3) Brock slandered many upstanding citizens in the community by falsely
swearing they had participated in unlawful dice games, (4) Brock was playing "supercop" by calling
in a SWAT team to serve the search warrant, and (5) the machine gun carrying, hooded, combat
attired SWAT team raided a friendly dice game "on a beautiful afternoon in May" when some
"buddies" were having barbecue and "pitching dice."

 The State unwisely offered in evidence the affidavit and the search warrant and the
trial court erred in admitting them. However, it was only the defense that used the affidavit during
trial and in jury argument. Defense counsel adroitly used the affidavit in cross-examination and in
his closing jury argument.

 After examining the entire record, we conclude that there is little likelihood that the
error had a substantial and injurious effect or influence on the jury's verdict; from our review of the
record, we have fair assurance that the error did not influence the jury or had but slight effect. 
Appellant's first point of error is overruled.


Limiting Instruction


In his fourth point of error, appellant complains that the trial court erred in denying his request for
a limiting instruction as to State's Exhibit 37, the search warrant and affidavit. When the search
warrant affidavit and warrant were admitted in evidence over appellant's objection, appellant did not
ask for a limiting instruction. Apparently, appellant took the sound position that the affidavit and
warrant were not admissible for any purpose. However, after testimony was closed, appellant filed
a written request asking the trial court to instruct the jury that: "The search warrant and its contents
are not offered for the truth of the matter asserted. The contents and the statements contained therein
are not evidence and should not be considered by you for any purpose. The search warrant is in
evidence solely to show that a search warrant existed on May 6, 1999."

 At the charging conference, defense counsel suggested, that rather than giving his
requested charge, the trial court reconsider and change its ruling admitting this evidence. Defense
counsel pointed out that, "I feel like if [this evidence] is removed from evidence at this time, it hasn't
been published to the jury," the error in admitting the evidence would be cured. Counsel suggested
the court could reopen for the purpose of changing its ruling and withdraw the erroneously admitted
evidence. The State voiced an objection that when the affidavit and search warrant were offered,
counsel made no objection to the affidavit but objected that the whole document [affidavit and
warrant] was hearsay. Further, the State reminded the court that it was the defense counsel who had
used the contents of the affidavit to extensively cross-examine the State's witnesses. Also, the State
argued that appellant had waived any claim that the evidence was admissible for only a limited
purpose by not making that objection at the time the evidence was admitted. The court concluded,
perhaps erroneously, that it could not reopen for the purpose of changing the ruling because both
sides had closed.

 Appellant's requested charge was not included in the court's jury charge. On appeal,
the State urges that appellant was not entitled to a limiting charge because he did not ask for it when
the evidence was admitted. The State cites Hammock v. State, 46 S.W.3d 889, 894 (Tex. Crim. App.
2001), a case decided after the trial of the instant case. Hammock interprets Rule of Evidence
105(a) (4)
 and holds that a defendant is not entitled to a jury instruction limiting consideration of
evidence unless he requested a limiting instruction at the time the evidence was admitted.

 In this case, the affidavit and warrant were not admissible for any purpose; they were
not admissible for a limited purpose. Their admission was error, but we have fully considered the
error and found it harmless. Because the affidavit and warrant were not admissible for a limited
purpose in this case, the trial court did not err in failing to give the requested charge. Appellant's
fourth point of error is overruled.


Voir Dire on Lesser Included Offenses


 In his second point of error, appellant asserts that the trial court erred in refusing to
permit him to voir dire the venire on the affirmative defenses contained in Sections 47.02 and 47.04
of the Penal Code. See Tex. Pen. Code Ann. §§ 47.02(b) (West Supp. 2001), (5)
 47.04(b) (West
1994). (6)
 

 The underlying offense with which appellant was charged in these cases, we reiterate,
was Section 47.03(a)(1) of the Penal Code. See Tex. Pen. Code Ann. § 47.03(a)(1) (West 1994). 
Section 47.03(a)(1) does not provide for any affirmative defenses. It has been recognized that
Sections 47.02, 47.03, and 47.04 have different purposes and that the legislature sought to
decriminalize social gambling and to provide minimal penalties for the individual who utilizes the
services of a professional gambler. See Adley v. State, 718 S.W.2d 682, 683 (Tex. Crim. App. 1985);
Henderson v. State, 661 S.W.2d 721, 724-26 (Tex. Crim. App. 1983). Also, affirmative defenses
such as these provided for in Sections 47.02 and 47.04 are not applicable to Section 47.03. See State
v. Amvets Post Number 80, 541 S.W.2d 481, 483 (Tex. Civ. App.--Dallas 1976, no writ). However,
the gist of appellant's argument is that the offenses of keeping a gambling place prohibited by
Section 47.04 and gambling prohibited by Section 47.02 are lesser included offenses of gambling
promotion prohibited by Section 47.03. Therefore, appellant argues he was entitled to voir dire the
jury on the lesser included offenses and the affirmative defenses provided for those offenses. See
Santana v. State, 714 S.W.2d 1, 10 (Tex. Crim. App. 1986).

 An offense is a lesser included offense if:




 it is established by proof of the same or less than all the facts required to
establish the commission of the offense charged;


 


 it differs from the offense charged only in the respect that a less serious injury
or risk of injury to the same person, property, or public interest suffices to
establish its commission;


 


 it differs from the offense charged only in the respect that a less culpable mental
state suffices to establish its commission; or


 


 it consists of an attempt to commit the offense charged or an otherwise included
offense.




Tex. Code Crim. Proc. Ann. art. 37.09 (West 1981). We must then determine whether gambling and
keeping a gambling place are lesser included offenses of gambling promotion.

 The elements of gambling promotion are: (1) a person, (2) intentionally or knowingly,
(3) operates or participates in the earnings of a gambling place. See Tex. Pen. Code Ann.
§ 47.03(a)(1) (West 1994). (7)

 The elements of gambling are: (1) a person, (2) intentionally or knowingly, (3) plays
and bets for money or other thing of value at any game played with dice. See Tex. Pen. Code Ann.
§ 47.02(a)(3) (West Supp. 2001). (8)

 The elements of keeping a gambling place are: (1) a person, (2) knowingly, (3) uses
a gambling place or permits another to use as a gambling place, (4) real estate, building, room, tent,
vehicle, boat, or other property whatsoever, (5) owned by him or under his control or rents or lets
such property with the intent that it be so used. See Tex. Pen. Code Ann. § 47.04(a) (West 1994). (9)

 A violation of § 47.04 requires the additional element not required by § 47.03 that
the person own, lease, or let the place where gambling occurs. A violation of § 47.02 requires the
additional element not required by § 47.03 that the person himself play and bet for money or other
thing of value at any game played with dice.

 Because the offenses prohibited by Section 47.02 and 47.04 each provide for an
additional element not required for the violation of Section 47.03, keeping a gambling place and
gambling are not lesser included offenses of gambling promotion. The trial court did not err in
refusing to allow defense counsel to voir dire the jury on the affirmative defenses provided for
Sections 47.02 and 47.04. Appellant's second point of error is overruled.


Excluded Testimony


 In his third point of error, appellant complains that the trial court erred in excluding
testimony of Adam Morriss, a former county attorney, (in another county--not Tom Green county)
concerning the affirmative defenses of keeping a gambling place provided in Section 47.04. Because
the offenses prohibited by Sections 47.04 and 47.02 are not lesser included offenses of the offense
prohibited by Section 47.03, the court did not err in disallowing the proffered testimony. Moreover,
because the testimony offered concerned a pure question of law, the trial court did not err in
disallowing the testimony. (10) See Dickerson v. DeBarbieris, 964 S.W.2d 680, 690 (Tex.
App.--Houston [14th Dist.] 1989, no pet.); Lyondell Petrochemical Co. v. Flour Daniel, Inc., 888
S.W.2d 547, 554 (Tex. App.--Houston [1st Dist.] 1994, writ denied). Appellant's third point of
error is overruled. 


Juror Not Questioned


 In his fifth point of error, appellant insists that the trial court erred in denying his
"request to question a juror who indicated that the fact he knew several witnesses was 'affecting' him
as a juror." On the second day of trial, the trial court told counsel that the bailiff had informed the
court that one of the jurors had told the bailiff that "he [the juror] knows the witnesses who have
been present [sic] and that it is affecting him as a juror." Defense Counsel asked to have the juror
questioned. The trial court refused counsel's request. On appeal, appellant contends that
"[a]ppellant's timely request to interrogate the juror to determine whether his knowledge of the
State's witnesses was 'affecting him as a juror' called into question his ability to be fair and
impartial . . . ." Appellant argues: "During voir dire, the prosecutor asked if anyone knew any
State's witnesses. (5 RR at 16-18). While several panelists noted they knew some State's witnesses,
none indicated their ability to be fair and impartial was affected by their knowledge. (5 RR at 17-23)." Appellant is mistaken. On the pages of the record indicated, the prospective jurors were not
asked if they knew the witnesses who might testify. On the pages of the record indicated, the
prospective jurors were asked whether they knew Jerry Dean Clements, Shannon Carpenter, or
Robert Fairchild. These three individuals were alleged to have collaborated with appellant in
committing the offense of gambling promotion, but none of these three individuals testified in the
trial of these cases. Also, on the pages of the record designated, prospective jurors were asked by
the prosecutor whether they knew attorneys Adam Morriss and Melvin Gray. Although Gray's name
was mentioned during trial, he was not called as a witness and did not testify. Morriss did not testify
before the jury; Morriss was called as a witness by defense counsel and testified out of the presence
of the jury on a bill of exception for the defense.

 We have examined the record made on jury voir dire and have been unable to find
where either the prosecutors or defense counsel informed the prospective jurors who might be
witnesses. The prospective jurors were never asked whether the witnesses who might testify would
affect the juror's fairness and impartiality. Not having used diligence during voir dire to determine
whether the witnesses expected to testify would cause any prospective juror to be prejudiced or
biased, appellant cannot now complain. See Gonzales v. State, 3 S.W.3d 915, 917 (Tex. Crim. App.
1999); Armstrong v. State, 897 S.W.2d 361, 363-64 (Tex. Crim. App. 1995).

 The State, in its brief, argues that the juror who said he was "affected" by the
witnesses who had testified was the same juror who had told the trial court after he had been selected
as a juror that his service on the jury would interfere with his planned vacation. From our inspection
of the record, we cannot determine whether this was true or not. Counsel has not designated where
we can find, and we cannot find, the name or any identification of either the juror whose vacation
plans would be interfered with or the juror who said he was "affected" by the witnesses who had
testified.

 It is also important to note that appellant did not file a motion for new trial and obtain
a hearing in an attempt to complete the record on the issue he has now presented on appeal. A
motion for new trial is not a requisite for raising a point on appeal; however, a motion for new trial
is sometimes a necessary step to adduce facts of a matter not otherwise shown in the record. See
Tex. R. App. P. 21.2; 43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice 
and Procedure § 41.01 (2d ed. 2001). This is especially necessary when there is a claim of jury
misconduct. See id.; Tex. R. App. P. 21.3(g); Armstrong, 897 S.W.2d at 363. Because of the state
of the record before us, we are unable to say that the trial court abused its discretion in refusing to
allow defense counsel to interrogate the juror. Appellant's fifth point of error is overruled.




 The judgments are affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Dally*

Affirmed on Both Causes

Filed: December 20, 2001

Publish
























* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. "Identifying challenged evidence as hearsay or as calling for hearsay should be regarded
by courts at all levels as a sufficiently specific objection, except under the most unusual
circumstances [citation omitted]. Indeed, it is difficult to know how much more specific such an
objection could be under most circumstances." Lankston v. State, 827 S.W.2d 909, 910 (Tex.
Crim. App. 1992); Cofield v. State, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994). Appellant
preserved for appellate review the matter about which he complains.
2. There are exceptions in which search warrants or affidavits may be admissible over a
hearsay objection. When a defendant disputes the existence of a warrant and a warrant exists, the
warrant may be admitted before the jury. See Sallings v. State, 789 S.W.2d 408, 416-17 (Tex.
App. Dallas 1990, pet. ref'd). Also, if a defendant makes probable cause an issue before a jury,
hearsay evidence is admissible. See Juarez v. State, 758 S.W.2d 772, 774 n.1 (Tex. Crim. App.
1988); Murphy v. State, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982); Adams v. State, 552
S.W.2d 812, 814 n.1 (Tex. Crim. App. 1977); Robertson v. State, 545 S.W.2d 157, 159 (Tex.
Crim. App. 1977); Lacy v. State, 424 S.W.2d 929, 931 (Tex. Crim. App. 1967). In the instant
case, appellant did not claim the officers did not have a warrant and did not make probable cause
an issue before the jury.
3. We have taken into account a defendant's right to meet, destroy, or explain improperly
admitted evidence. See Leday v. State, 983 S.W.2d 713, 719 (Tex. Crim. App. 1998); Thomas
v. State, 572 S.W.2d 507, 512 (Tex. Crim. App. 1978).
4. Rule 105. Limited Admissibility



 Limiting Instruction. When evidence which is admissible as to one party or
for one purpose but not admissible as to another party or for another purpose
is admitted, the court, upon request, shall restrict the evidence to its proper
scope and instruct the jury accordingly; but, in the absence of such request the
court's action in admitting such evidence without limitation shall not be a
ground for complaint on appeal.



Tex. R. Evid. 105(a).

5. (b) It is a defense to prosecution under this section that:



 the actor engaged in gambling in a private place


 


 no person received any economic benefit other than personal winnings;
and


 


 except for the advantage of skill or luck, the risks of losing and the
chances of winning were the same for all participants.



Tex. Pen. Code Ann § 47.02(b) (West Supp. 2001).

6. (b) It is an affirmative defense to prosecution under this section that:



 the gambling occurred in a private place;


 


 no person received any economic benefit other than personal winnings;
and


 


 except for the advantage of skill or luck, the risks of losing and the
changes of winning were the same for all participants.



Id. § 47.04(b) (West 1994).

7. § 47.03 Gambling Promotion



 A person commits an offense if he intentionally or knowingly does any of the
following acts:

 
 operates or participates in the earnings of a gambling place;

 


Tex. Pen. Code. Ann. § 47.03(a)(1) (West 1994).

8. § 47.02 Gambling 



 A person commits an offense if he:




 plays and bets for money or other thing of value at any game played
with cards, dice, balls, or any other gambling device.



Tex. Pen. Code Ann. § 47.02(a)(3) (West Supp. 2001).

9. § 47.04. Keeping a Gambling Place



 A person commits an offense if he knowingly uses or permits another to use
as a gambling place any real estate, building, room, tent, vehicle, boat, or
other property whatsoever owned by him or under his control, or rents or lets
any such property with a view or expectation that it be so used.



Tex. Pen. Code Ann. § 47.04(a) (West 1994).
10. The witness was asked, "And what would your testimony be to what these affirmative
defenses are?" The witness answered: "Well, the same as outlined in 47.04, subsection B, (1)
the gambling occurred in a private place, (2) no person received any economic benefit other than
personal winnings, and (3) except for the advantage of skill or luck, the risk of losing and the
chances of winning are the same for all participants."