OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 25, 2002

The Honorable Tom Ramsay
Chair, County Affairs Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0482

Re: Whether a private Texas nonprofit corporation may operate a "charitable sweepstakes fundraising program," and related questions (RQ-0443-JC)

Dear Representative Ramsay:

You ask whether a particular "charitable sweepstakes fundraising program" conducted by a private Texas nonprofit corporation is "legal" under Texas law.[1] We answer in the negative. We conclude that the sweepstakes scheme about which you ask is a "lottery," the promotion of or setting up of which would violate section 47.03 of the Penal Code. *See* TEX. PEN. CODE ANN. § 47.03(5) (Vernon 1994). Use of any "gambling devices" in the conduct of this sweepstakes would also violate chapter 47 of the Penal Code. *See id.* § 47.06. Given that the described sweepstakes scheme is prohibited under Texas law, the fact that four percent of the sweepstakes proceeds is designated for "charitable" purposes does not make the sweepstakes scheme "legal." We cannot determine whether moneys used to play the sweepstakes are deductible as "charitable contributions" under section 170 of the Internal Revenue Code.

As a preliminary matter, we note that because the sweepstakes is conducted by a private nonprofit corporation, this request does not implicate federal law with respect to Native American gaming. The sweepstakes is conducted by "Cherokee Indian Nation of Texas, Incorporated." Notwithstanding its name, the corporation is not a federally recognized Native American Indian tribe or related to any such tribe. The corporation is incorporated by private individuals under the Texas Non-Profit Corporation Act for the purpose of transacting "any and all lawful business for which non-profit organizations may be incorporated under the laws of the State of Texas, and section 501(c)(3) of the [Internal] Revenue Code."[2] We do not know whether the corporation is a section 501(c)(3) charitable corporation. Thus, the provisions of the Federal Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 (1994), do not apply here.

---

[1]*See* Letter from Honorable Tom Ramsay, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Sept. 19, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

[2]*See* Amendment to Articles of Incorporation of the Cherokee Indian Nation of Texas (June 17, 1996) (on file with the Office of the Secretary of State of Texas, Corporations Section).

We have been provided with little information regarding the corporation's "charitable sweepstakes fundraising program" (the "sweepstakes"). You do not describe the sweepstakes, but refer us to "Enabling Tax Opinions" and "Rules and Regulations for the Participating Location Owners and the Equipment Owners" attached to the Request Letter.[3] The "Rules and Regulations" set out the following sweepstakes rules: "Any person may[,] . . . without [making] any purchase or without [making] any donation," enter a weekly sweepstakes drawing by filling out a numbered ticket made available at a particular sweepstakes location. *See* "Rules and Regulations," *supra* note 3, at 1. Although not required for the purchase of a ticket, a participant may "donate" money to the sweepstakes and become a "member" of the corporation. *See id.* at 1-2. The holder of a winning ticket number who has not donated money has the possibility of winning "[one percent] from each US Dollar inserted and Donated into the Sponsoring Charitable Sweepstakes Machines at that location from the prior Week." *Id.* at 1. In contrast, the participant "inserting Funds as a donation into the local Charitable Sweepstake Machines has the possibility of winning approximately [seventy percent] of the total gross revenue inserted and Donated into the Sweepstake Machines." *Id.* at 2. The owner of a particular sweepstakes location receives twelve and a half percent of the amount inserted into the sweepstakes machines at that location as rental payment. *See id.* The owner of the sweepstakes machines at a particular location also receives twelve and a half percent as rental income. *See id.* (Each location owner and machine owner must become a "member and sponsor" of the corporation and its sweepstakes.). The corporation receives four percent for unidentified "Charitable Humanitarian Projects." *See id.* Finally, a particular location may have daily sweepstakes drawings. *See id.* at 1-2.

You ask:

> (1) Even if the US Tax code is complied with in all respects, is this sweepstakes fundraising program legal in Texas?
>
> (2) Are the devices or machines used in such a sweepstakes legal in Texas if used only for the sweepstakes?
>
> (3) Are the proceeds from the sweepstakes distributed in a proper manner?
>
> (4) Considering the sweepstakes proceeds go entirely to a charitable organization, is the money used to play the game tax deductible?

*See* Request Letter, *supra* note 1, at 1.

---

[3]*See* Attachments to Request Letter: "Enabling Tax Opinions" of Texas Tax Management Associates (Sept. 8, 2001) [hereinafter "Tax Opinion"]; Exhibit A, Cherokee Indian Nation of Texas, Inc., Charitable Sweepstake Fundraising Program, Rules and Regulations for the Participating Location Owners and the Equipment Owners [hereinafter "Rules and Regulations"].

With respect to your first question, we have found no federal tax law provision that specifically deals with a "charitable sweepstakes fundraising program" or, more importantly, purports to authorize one. *See* "Tax Opinion," *supra* note 3 (stating that corporation and its sweepstakes comply "with requirements of the Internal Revenue Service of the United States Government as a Non-profit Charitable Sweepstakes Fundraising Program"). In any case, we do not believe that the sweepstakes scheme is "legal" under Texas law. In our opinion, the sweepstakes, based on the limited information available to us, is a lottery prohibited by article III, section 47 of the Texas Constitution and chapter 47 of the Texas Penal Code.

Article III, section 47(a) of the Texas Constitution directs the legislature to prohibit lotteries and gift enterprises other than those specifically authorized by subsections (b), (d), and (e) of the constitutional provision. *See* TEX. CONST. art. III, § 47(a). Those subsections permit the legislature to authorize bingo games conducted by certain charitable organizations, charitable raffles conducted by qualified organizations, and a lottery operated by the state. *See id.* art. III, § 47(b), (d), (e). Pursuant to this authority, the legislature has enacted the Bingo Enabling Act, *see* TEX. OCC. CODE ANN. ch. 2001 (Vernon 2002), the Charitable Raffle Enabling Act, *see id.* ch. 2002, and the State Lottery Act, *see* TEX. GOV'T CODE ANN. ch. 466 (Vernon 1998 & Supp. 2002).

Consistent with article III, section 47(a) of the Texas Constitution, chapter 47 of the Penal Code prohibits gambling and gambling related activities, including the promotion of a "lottery." *See* TEX. PEN. CODE ANN. §§ 47.01-.10 (Vernon 1994 & Supp. 2002). Section 47.03 provides that a person commits an offense of "gambling promotion," a Class A misdemeanor, if the person "intentionally or knowingly," among other things:

> for gain, *sets up or promotes any lottery* or sells or offers to sell or knowingly possesses for transfer, or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any lottery.

*Id.* § 47.03(a)(5) (Vernon 1994) (emphasis added). *See also id.* §§ 47.02 (a)(1), (2) (Vernon Supp. 2002) (person commits offense if bets on game or plays for money any game played with gambling device); .04(a) (Vernon 1994) (person commits offense if knowingly uses or permits another to use property as gambling place); .06(a) (person commits offense if with intent to further gambling, person knowingly possesses gambling devices). Section 47.01(7) of the Penal Code defines the term "lottery" as follows:

> "Lottery" means any scheme or procedure whereby *one or more prizes are distributed by chance* among persons who *have paid or promised consideration for a chance to win anything of value*, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or some other name.

*Id.* § 47.01(7) (Vernon Supp. 2002) (emphasis added). Under section 47.01(7), three elements comprise an illegal "lottery": (1) one or more prizes, (2) distribution of the prizes by chance, and (3) payment or promise of consideration for the chance to win. *See id.* This statutory definition echoes the established definition of a "lottery" under article III, section 47 and prior Penal Code provisions. *See Cole v. State*, 112 S.W.2d 725, 730 (Tex. Crim. App. 1937) (J. Hawkins, concurring) (prize, chance, and direct or indirect consideration necessary to establish a thing as lottery); *Brice v. State*, 242 S.W.2d 433, 434 (Tex. Crim. App. 1951) (same); *State v. Socony Mobil Oil Co., Inc.*, 386 S.W.2d 169, 172 (Tex. Civ. App.–San Antonio 1964, writ ref'd n.r.e.) (same).

The sweepstakes conducted by the corporation at issue here is a "lottery." The first two elements—the distribution of one or more prizes by chance—are clearly present in the sweepstakes game here. A money prize, either one percent or seventy percent of the total amount "donated" by participants in the prior week, is awarded to the holder of a winning ticket pursuant to a weekly drawing. Additionally, we do not believe that the characterization of the payment of money as a "donation" and the distribution of free tickets removes the element of consideration from this scheme. In Attorney General Opinion H-820, this office determined that a proposal to distribute tickets to persons who make charitable "donations" of a designated sum is indistinguishable from an outright sale of tickets. *See* Tex. Att'y Gen. Op. No. H-820 (1976) at 4; *see also* Tex. Att'y Gen. Op. No. JM-513 (1986) at 2. Furthermore, as this office has previously observed, "the fact that one person receives a chance to win for free while another persons 'pays' for the chance does not negate the fact that someone in the contest has paid consideration for the chance to win." Tex. Att'y Gen. Op. No. JM-513 (1986) at 2. If, in fact, no one actually makes a donation, then there would be no "lottery." *See id.* Similarly, here, if there are no donations, there will be no sweepstakes drawings: the sole source of prizes in the sweepstakes is the donation money received in the previous week. And there is strong incentive to make a "donation." Persons who make donations have the possibility of winning seventy percent of the amounts donated in the previous week rather than the one percent available to those who make no donations. *See* Tex. Att'y Gen. LO-97-008, at 6 ("If 'any character of favoritism' is shown to paying entrants, the scheme is a 'lottery.'"); *cf. Socony Mobil Oil Co.*, 386 S.W.2d at 172-73 (lottery statute not implicated in promotional TV-bingo scheme absent showing of "any character of favoritism" to paying customers of gas filling stations).

In sum, because the sweepstakes is a "lottery" under section 47.01(7) of the Penal Code, the "setting up" or "promotion" of the sweepstakes would constitute an offense under section 47.03(a)(5) of the Penal Code.[4] *See* TEX. PEN. CODE ANN. §§ 47.01(7), .03(a)(5), (Vernon 1994 & Supp. 2002).

---

[4]The conduct of the sweepstakes or participation in it may also violate other Penal Code provisions. *See* TEX. PEN. CODE ANN. §§ 47.02(a)(1), (2) (Vernon Supp. 2002) (person commits offense if person bets on game or plays and bets for money any game played with gambling device); .04(a) (Vernon 1994) (person commits offense if knowingly uses or permits another to use property as gambling place); .06(a) (person commits offense if with intent to further gambling, person knowingly possesses gambling devices).

The fact that the sweepstakes is purportedly intended to raise money for charitable purposes does not change that it is a prohibited lottery under chapter 47 of the Penal Code. *See State v. Amvets Post Number 80*, 541 S.W.2d 481, 483 (Tex. Civ. App.–Dallas 1976, no writ); *see also Tussey v. State*, 494 S.W.2d 866, 869 (Tex. Crim. App. 1973) (any effort by legislature to authorize, license, or legalize lotteries is unconstitutional); Tex. Att'y Gen. Op. No. JM-513 (1986) (promotion intended to raise money for charitable purpose did not change fact that scheme was a prohibited lottery); Tex. Att'y Gen. Op. No. H-820 (1976) at 5 (lotteries prohibited even though conducted for charitable purposes). In a case decided prior to the constitutional amendment permitting the legislature to authorize bingo, *State v. Amvets Post Number 80*, the Dallas Court of Appeals held that bingo conducted by a veterans group was a prohibited lottery. *See Amvets Post Number 80*, 541 S.W.2d at 483. Significantly, the court stated that the conduct of the game could not be justified on the theory that "if the game is restricted to members and their families it is not operated for gain." *Id.* at 482. The *Amvets* court noted that the bingo games were held on a regular basis and were "undertaken for the express purpose of raising money"; that the revenues were used for the veterans group's "general operating expenses as well as for charitable" purposes; and that the proceeds were a regular and expected part of the bingo scheme. *See id.* at 483. The court concluded:

> Even if all the proceeds were contributed to charity, the game would still be an enterprise undertaken 'for gain.' A gain is no less a gain if it is contributed to charity. Consequently, a lottery is no less a lottery if the proceeds are used for a charitable purpose.

*Id.*

Article III, section 47(a) of the Texas Constitution provides limited exceptions from the general prohibition against gambling for charitable "bingo" and "raffle" and the state "lottery." *See* TEX. CONST. art. III, § 47(b), (d), (e). *See also* discussion *supra* p. 3. Consistent with the constitutional exceptions, it is a defense to prosecution under chapter 47 of the Penal Code that the conduct is authorized under the Bingo Enabling Act, chapter 2001 of the Occupations Code, or the Charitable Raffle Enabling Act, chapter 2002 of the Occupations Code, or that it was "a necessary incident to the operation of the state lottery" and was directly or indirectly authorized by the State Lottery Act, chapter 466 of the Government Code, or the Texas Lottery Commission. *See* TEX. PEN. CODE ANN. § 47.09 (Vernon Supp. 2002). We look at each of these provisions in turn and conclude that the sweepstakes is not authorized under any of them.

The Bingo Enabling Act permits authorized organizations—a religious society, a nonprofit organization for the support of medical research or treatment programs, a fraternal organization, a veterans organization, or a volunteer fire department—to obtain a license to conduct bingo in accordance with its provisions. *See* TEX. OCC. CODE ANN. §§ 2001.101, .551 (Vernon 2002). "Bingo" is "a specific game of chance, *commonly known as bingo or lotto*, in which prizes are awarded on the basis of designated numbers or symbols conforming to randomly selected numbers or symbols." *Id.* § 2001.002(4) (emphasis added). The corporation here—a nonprofit corporation incorporated for the purpose of carrying on any activity that may be conducted by a nonprofit corporation or a section 501(c)(3) charitable corporation—would not appear to be an organization

that may be licensed to conduct bingo under the act. But more importantly, the sweepstakes, based on the information available to us, is not a game of "bingo," as commonly understood and as defined by the bingo statute. *See id.*; *see also* "Rules and Regulations," *supra* note 3, at 1 (person may enter weekly sweepstakes drawing by filling out numbered ticket, placing half of ticket showing name, address, and phone number in "the Container" and keeping other numbered half).

The Charitable Raffle Enabling Act authorizes qualified organizations—qualified religious societies, qualified volunteer fire departments, qualified volunteer emergency medical service organizations, or qualified nonprofit organizations—to conduct a raffle subject to the conditions set out in the act. *See* TEX. OCC. CODE ANN. §§ 2002.002(2), .051 (Vernon 2002). The statute defines a "raffle" as "the award of one or more prizes by chance *at a single occasion among a single pool or group of persons* who have paid or promised a thing of value for a ticket that represents a chance to win a prize." *Id.* § 2002.002(6) (emphasis added). The prize offered at a raffle may not be money. *See id.* § 2002.056(a). All proceeds from the sale of tickets for a raffle must be expended directly for the charitable purposes of the organization. *See id.* § 2002.053. Lastly, an organization may not conduct more than two raffles in a calendar year. *Id.* § 2002.052.

With respect to the sweepstakes here, we do not know whether the corporation meets the requirements for a "qualified nonprofit organization" authorized to conduct raffles under the Charitable Raffle Enabling Act. *See id.* § 2002.003 (setting out criteria for qualified nonprofit organizations). But even assuming that it does, the sweepstakes, based on the information available to us, is not a "raffle" at which prizes are awarded "at a single occasion among a single pool or group of persons." *See id.* § 2002.002(6). Moreover, contrary to the Charitable Raffle Enabling Act, the sweepstakes prize awarded is money; the sweepstakes drawings are conducted more frequently than twice in a calendar year; and all proceeds of the sweepstakes are not spent for the charitable purposes of the corporation, whatever they may be, because proceeds of the prior week's sweepstakes are used to fund subsequent week's drawings. *See* Tex. Att'y Gen. Op. No. JC-0046 (1999) at 4-5 (organization may use raffle proceeds to pay reasonable, incidental, and necessary expenses of conducting raffle from which proceeds were raised, but no proceeds may be used to fund subsequent raffles).

Finally, the State Lottery Act authorizes the state through the Texas Lottery Commission to conduct lottery games in accordance with the act and the rules adopted by the Commission thereunder. *See* TEX. GOV'T CODE ANN. §§ 466.001-.410 (Vernon 1998 & Supp. 2002). "Lottery" for the purposes of the act means "the procedures *operated by the state.*" *Id.* § 466.002(5) (emphasis added); *see also id.* § 466.002(6) ("'Lottery game' includes a lottery activity."). The corporation's sweepstakes is clearly not authorized by this statute. The State Lottery Act does not authorize any person or entity other than the state to conduct a lottery or a lottery activity. The corporation is not the state.

You next ask whether the devices or machines used in the sweepstakes are "legal in Texas if used only for the sweepstakes[.]" *See* Request Letter, *supra* note 1, at 1. You also ask whether "the proceeds from the sweepstakes are distributed in a proper manner." *See id.* The answer to both

questions is, of course, "no." These questions assume that the corporation's sweepstakes scheme is authorized under Texas law. In light of our conclusion to the contrary, we do not address these questions in great detail. However, in order to provide some guidance, we briefly explain our response.

Although you do not elaborate on your question regarding the legality of the machines or devices used in the sweepstakes, we presume that you are concerned that they may be prohibited gambling devices under chapter 47 of the Penal Code. *See* TEX. PEN. CODE ANN. §§ 47.01(4) (Vernon Supp. 2002) (defining "gambling devices"); .06(a) (Vernon 1994) (providing that person commits offense, if with intent to further gambling, person knowingly owns or possess gambling devices); *see also id.* §§ 47.02 (a)(3) (Vernon Supp. 2002) (person commits offense if plays for money any game played with gambling device); .04(a) (Vernon 1994) (person commits offense if knowingly uses or permits another to use property as gambling place). Assuming that the sweepstakes machines or devices are gambling devices, as your question suggests, no provision in chapter 47 of the Penal Code makes them "legal," as a matter of law, because they are used only in the conduct of a "charitable" sweepstakes of the type at issue here. *Cf. id.* § 47.06(d) (Vernon 1994) (providing defenses for prosecution under section 47.06(a) if device or equipment is used or intended for use entirely in private place, a person involved in gambling does not receive benefit other than personal winnings, and if chance of winning is the same for all participants); *id.* § 47.09 (Vernon Supp. 2002) (providing defenses for prosecution for offenses under chapter 47 if conduct authorized under Bingo Enabling Act, Charitable Raffle Enabling Act, or State Lottery Act). Accordingly, use of any "gambling devices" in the conduct of the sweepstakes would also violate chapter 47 of the Penal Code.

You also ask whether the sweepstakes proceeds are distributed in a proper manner. Because the sweepstakes is prohibited under Texas law, how the proceeds are distributed is legally irrelevant. Again, the fact that a portion of the proceeds is designated for charitable purposes of the corporation does not make the sweepstakes "legal" for state law purposes. *See* discussion *supra* p. 5.

Finally, you ask: "Considering [that] the sweepstakes proceeds go entirely to a charitable organization, is the money used to play the game tax deductible?" Request Letter, *supra* note 1, at 1. Because there is no local or state income tax, we presume you ask about the deductibility under federal tax law. *See* 26 U.S.C. § 170(a)(1) (1994) (providing for deduction of charitable contributions made in compliance with statute and regulations promulgated thereunder). Whether the sweepstakes "donations" are deductible as "charitable contributions" under section 170 of the Internal Revenue Code and the regulations promulgated thereunder is a question appropriately addressed to the Internal Revenue Service rather than this office. *See, e.g.,* Tex. Att'y Gen. LO-95-073, at 3 n.5 (exceptions in federal law to application of FICA and FUTA taxes is an issue that can only be resolved by Internal Revenue Service and proper court); Tex. Att'y Gen. Op. No. JM-313 (1985) at 12-13 ("Questions about the federal income tax consequence of the receipt by individual employees of 'in kind' bonuses should be addressed to the Internal Revenue Service."); Tex. Att'y Gen. LO-88-98, at 3 ("The question you ask is one of federal tax law, and neither the Internal

Revenue Service nor the courts would have reason to accord any particular authority to an opinion of this office on this matter.").

## S U M M A R Y

A particular "charitable sweepstakes fundraising program" conducted by a private nonprofit corporation is illegal under Texas law. The described sweepstakes scheme is a "lottery," the promotion of or setting up of which would violate section 47.03 of the Penal Code. Use of any "gambling devices" in the conduct of this sweepstakes would also violate chapter 47 of the Penal Code. Given that the sweepstakes scheme is prohibited under Texas law, the fact that four percent of the sweepstakes proceeds is designated for "charitable" purposes does not make the sweepstakes scheme "legal."

Yours very truly,

JOHN CORNYN
Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee